## Edward W. Myatt *et al.*

### *v.*

## Sarah S. Walker *et al.*

1. Insanity — *question of, tried by a jury.* In all proceedings in chancery, involving questions of insanity, it is the duty of the court to direct that an issue be formed and tried by a jury.

2. *It seems*, that, in cases involving questions of insanity, sanity is the rule and insanity the exception; and, where there is only a balance of evidence, or evidence merely sufficient to raise a doubt, the presumption in favor of sanity must prevail. An instrument, therefore, made by a person of competent age, and under no legal disabilities, will, as a rule, be taken and held to be binding until incompetency is established; and the proof of that fact devolves upon the party contesting its binding force.

Appeal from the Circuit Court of Bond county; the Hon. Joseph Gillespie, Judge, presiding.

This case is sufficiently stated in the opinion of the court.

Messrs. O'Melveny & Houck, for the appellants.

Mr. S. P. Moore, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

This was a bill in chancery, filed by a portion of the heirs of Alexander Myatt against his other heirs, to set aside and vacate several deeds of conveyance executed by him in his lifetime. The bill alleges, that he was the owner of a large amount of real estate, which is described in the bill; that he was demented and of unsound mind previous to his death; and, while in that condition, Murphy Myatt, conspiring with others for the purpose of defrauding complainants of their interest as heirs in the estate of Alexander Myatt, induced him to execute and acknowledge a pretended, false and fraudulent deed, on the 3d of April, 1861, to Sarah S. Walker and Murphy Louisa Myatt, daughters of Murphy Myatt, in which the consideration expressed is $2,000, for a quarter section and a forty

acre tract of land; and, by a similar deed of the same date, to Nancy E. Barcroft, another daughter of Murphy Myatt, for the expressed consideration of $1,000, for an eighty acre tract of land.

The bill charges that no consideration was ever paid or intended to be paid, and the deeds were not intended to be absolute conveyances; that the grantor, in the unsoundness of his mind, was made to believe that these lands would be taken from him to pay several pretended debts, which he was induced to believe he was owing, unless he placed them temporarily in the hands of the grantees; that he was perfectly solvent; that the deeds were not delivered in his life-time, but were caused to be recorded by Murphy Myatt after his death; that he was of unsound mind at the time he made these deeds. The bill prays that the deeds may be set aside and vacated.

The answer admits, that Alexander Myatt died as alleged in the bill; that respondents are his heirs; that he had a large amount of real estate and personal property; that he was legally married to Murphy; but denies that on the 3d of April, 1861, he was of unsound mind; denies that any advantage was taken of him to procure the deeds. They allege that he was of sound mind at the time the deeds were executed; that they were made of his free choice and delivered by his request; that a good and valuable consideration was paid for the lands; that they were executed in good faith, and not to place the property temporarily in their hands. They deny the use of any false representations to procure the deeds. The bill waived the oath to the answer.

A replication was filed, and a hearing was had on the bill, answer, replication and proofs, and the court below dismissed the bill. The case is brought to this court by appeal to reverse that decree.

In cases of this character, sanity is the rule and insanity the exception. Observation teaches that but a small percentage of the human family are of unsound mind. It is perhaps equally true, that, while nearly all men are sane, there are but few who do not have their peculiarities, amounting in many cases to

eccentricities. In many cases they are marked, and attract attention, but yet it does not amount to insanity. An instrument, therefore, made by a person of competent age, and under no legal disability, as a rule, is always taken to be binding until incompetency is established. And the proof of that fact devolves upon the person contesting its binding force.

When unsoundness of mind is alleged as a ground for setting aside a deed, the fact must be established with reasonable certainty. If there is only a balance of evidence, or a mere doubt of the sanity of the maker of the deed, the presumption in favor of sanity must turn the scale in favor of its validity. To destroy the binding effect of the deed, the evidence must decidedly preponderate. This question is usually raised at a period more or less remote from the time when the instrument was executed, frequently many years afterward, and seldom near the time; and, however honest and truthful the witnesses may be, subsequent events, more or less proximate, enter largely into the formation of opinions entertained by them at the trial. Acts of the grantor occurring months after the execution of the instrument will necessarily be connected with peculiarities which, at the time, attracted no attention or suspicion of derangement, but, when coupled together, are regarded as strong, if not convincing, evidence that the mind was disordered at the time the deed was made, when it may be the party was perfectly sane.

Again, it not unfrequently occurs, that insanity develops itself so gradually, that no one can with certainty fix the period when the party had become insane. It not unfrequently happens that there is a considerable period of time when it is almost impossible to know whether the mind is acting naturally, or has become disordered to such an extent as to absolve the person from accountability as a responsible being. This question is one of great difficulty in most cases where the disease advances slowly and is not marked and decided in its approaches. Courts and juries should therefore be admonished, by this uncertainty and doubt, to exercise care, and to weigh carefully all of the circumstances connected with the fact in

arriving at a conclusion. The question is usually greatly embarrassed by contradictory evidence, which is always to be expected in cases depending on the opinions of witnesses.

In this case we have carefully examined the testimony in the record. We find it voluminous, doubtful in some respects, and largely conflicting. When, however, taken all together, we think it fails to sustain the decree. In the absence of all knowledge of the manner of the witnesses in giving their testimony, we feel some doubt as to where the true weight of evidence really lies. In all such cases, it is eminently proper that an issue should be formed and tried by a jury. Such a practice has always been fully sanctioned, and we think it more satisfactory, and better calculated to promote justice, and the practice should be adopted by the court below in all cases involving questions of insanity. The decree of the court below is reversed and the cause remanded, with instructions to have an issue formed, whether the grantor was insane at the time the deed was executed, and to have the issue thus made submitted to a jury and tried by them, and to proceed with the case to a final hearing.

*Decree reversed.*