ANTONIO COARI

*v.*

SAMUEL OLSEN.

1. ERROR—*reversal of decree on finding of facts.* Where the witnesses in a chancery suit are all examined orally on the hearing, so that the chancellor has the same facilities for judging of their credibility as a jury in a trial at law, the error in the finding as to fact must be clear and palpable to authorize a reversal.

2. ESTOPPEL—*by declarations obtained by cunning and falsehood.* It seems doubtful whether a party shall be estopped from asserting his title to real estate on account of declarations in regard to the title obtained from him by cunning and falsehood.

3. NOTICE—*how far possession is, of title.* The actual occupancy of premises is notice equal to the record of the deed or other instrument under which the occupant claims, and a subsequent purchaser takes subject to whatever right, title or interest such occupant may have. And, so far at least as the facts of this case are concerned, the rule of the common law is adhered to, that when a tenant changes his character by agreeing to purchase, his possession amounts to notice of his equitable title as purchaser.

4. FRAUDULENT DEED—*decree on setting aside.* Where a bill is filed by a prior purchaser of real estate to avoid a subsequent conveyance of his vendor made in fraud of his rights, the proper decree is to declare the title of the subsequent purchaser void. It is not proper in such case to require him to convey his title to the complainant, who must look to his vendor alone for a conveyance.

APPEAL from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Bill was filed by Samuel Olsen, in the court below, against Antonio Coari, Ebenezer Wakeley and Angelo Crescio, for the cancellation of a deed executed by Wakeley to Coari and a mortgage executed by Coari to Crescio, and for conveyance of title to Olsen.

It is alleged, in substance, that complainant purchased the premises, a lot in the city of Chicago, in 1849, and in 1850 erected thereon a house, in which he lived until about the 15th of August, 1874, when he was induced by one Peter

| 91 | 273 |
| 22a | 223 |
| 22a | 267 |
| 91 | 273 |
| 125 | 514 |
| 91 | 273 |
| 128 | 43 |
| 91 | 273 |
| 37a | 521 |
| 91 | 273 |
| 137 | 533 |
| 91 | 273 |
| 140 | 575 |
| 142 | 141 |
| 143 | 356 |
| 91 | 273 |
| 147 | 95 |
| 91 | 273 |
| 151 | 335 |
| 152 | 458 |
| 155 | 220 |
| 44a | 514 |
| 44a | 549 |
| 91 | 273 |
| 159 | 214 |
| 159 | 662 |
| 160 | 528 |
| 50a | 490 |
| 51a | 143 |
| 91 | 273 |
| 158 | 366 |
| 48a | 316 |
| 91 | 273 |
| 163 | 142 |
| 60a | 269 |
| 91 | 273 |
| 166 | 111 |
| 91 | 273 |
| 170 | 64 |
| 170 | 223 |
| 172 | 238 |
| 72a | 150 |
| 91 | 273 |
| 174 | 257 |
| 91 | 273 |
| 77a | 182 |
| 77a | 562 |
| 91 | 273 |
| 177 | 361 |
| 91 | 273 |
| 180 | 64 |
| 180 | 411 |
| 91 | 273 |
| 182 | 212 |
| 91 | 273 |
| 186 | 1584 |
| 89a | 1214 |
| 91 | 273 |
| 190 | 1465 |
| 91 | 273 |
| 194 | 1 49 |
| 194 | 3504 |
| 194 | 3505 |
| 91 | 273 |
| 102a | 1276 |
| 102a | 1300 |
| 91 | 273 |
| 200 | 1269 |

Nelson to emigrate to Dakota; that he left his son-in-law, Heinz, in charge of the house whilst he was in Dakota, Heinz occupying one story as a tenant, and the other two stories being let to other tenants. There are charges of misrepresentation and fraud against Peter Nelson, unimportant to be here further noticed than that complainant, while in Dakota, being much distressed for money, was induced to execute a deed of the property to Nelson, and Nelson agreed to go to Chicago, sell the property, pay off an incumbrance thereon, amounting to $500 and accruing interest, and, after deducting moneys advanced by Nelson, pay to the complainant the residue. The deed to Nelson was imperfect by reason of the absence of seals.

It is further alleged that, upon receiving a letter from Heinz which gave him information of unsatisfactory conduct on the part of Nelson in endeavoring to sell the property, complainant returned to Chicago, arriving there October 27, 1874; that upon such arrival, he was informed that Nelson had sold the property on the 23d of October, to Ebenezer Wakeley, for a nominal consideration of $3000, and executed and delivered to Wakeley a bond for a deed, conditioned that Nelson would convey the premises to Wakeley in fee simple, the bond reciting that $1600 had been paid, $100 of which was cash, and the balance the value of some lands in Missouri, which Wakeley conveyed to Nelson, and that, upon the payment of the remaining sum of $1400, the deed would be executed and delivered; that Nelson refusing to account to him, and knowing that he had been contriving to cheat and defraud him, complainant applied to Wakeley to ascertain whether he could not, in some way, save for him the proceeds of the sale; that Wakeley professed to be able to assist complainant, and complainant, under the stress of the circumstances, agreed to and did, on the 4th of November, 1874, execute a warranty deed of the premises to Wakeley, and received from Wakeley his two promissory notes, bearing that date, one for $400, payable six months after date, with interest at the rate of six per cent per annum, and the other for $465, payable one year after

date, with interest at the rate of eight per cent per annum, which notes were secured by mortgage on the premises, and Wakeley also assumed the payment of a prior mortgage on the premises for $500, to one Andrew Nelson, the sum which Wakeley agreed to pay to complainant, and the amount of the Andrew Nelson mortgage, being equal to the amount which Wakeley pretended he still owed Peter Nelson.

It is also further alleged, that complainant, who was then residing in the house on the premises, being desirous of receiving back the legal title of the premises, applied to Wakeley for a reconveyance of the same; that thereupon, on the 28th of November, 1874, Wakeley, under his hand and seal, contracted to reconvey to complainant the premises upon the payment of $1665, on these terms—$865, the receipt of which was therein acknowledged, and complainant was to pay, upon receiving a warranty deed, $265, and assume the incumbrance then on the premises, or assume an incumbrance of $800, as Wakeley should elect; and, by the terms of said contract, possession of the premises was then surrendered to complainant; that said contract was executed and delivered by Wakeley to complainant on the 28th day of November, 1874, while complainant was in the actual possession of the premises, residing thereon with his family, and he has since continually resided thereon; that complainant, upon the execution of that contract, executed and delivered to Wakeley a release of his mortgage for $875.

It is further alleged, that afterwards, Wakeley, confederating with Antonio Coari to cheat, etc., him out of the premises, on the 2d day of January, 1875, pretended to convey said premises to him by a warranty deed, and charges that Coari, at the time, knew of complainant's rights in the premises and was, also, bound in law to take notice of them; that, at the time that deed was executed, complainant was in the open, notorious and exclusive possession of the premises and every portion thereof, whereby Coari had full notice, etc., of all the rights and equities of the complainant in the premises, etc.;

that on the same day that Wakeley pretended to convey the premises to Coari, Coari and wife executed and delivered to Angelo Crescio a mortgage upon the premises to secure the pretended sum of $800, and it is charged that Crescio had full notice of complainant's rights at the time, etc.

Wakeley made no answer to the bill.

Coari answered, at length, requiring full proof to be made as to all matters alleged not explicitly denied, and denying that Wakeley executed a written contract under seal on the 28th of November, 1874, for the reconveyance of the premises to complainant, alleging that he (Coari) was a purchaser of the premises for a full valuable consideration, without notice, either actual or constructive, of any rights claimed by complainant in the premises; that before purchasing complainant informed him that he was a tenant of the premises under Wakeley and referred him to Wakeley as owner thereof; that complainant was, in fact, but a tenant of one room of the house under Wakeley, when he purchased, and that the contract purporting to have been made on the 28th day of November, 1874, whereby Wakeley purported to bind himself to reconvey the premises to complainant, was, in fact, executed after Wakeley had sold and conveyed the property to Coari and on the 11th of January, 1875, and was executed and ante-dated, at that time, pursuant to a fraudulent conspiracy between Wakeley and complainant to defraud Coari.

Crescio also answered, denying knowledge of complainant's rights, when the mortgage was executed, and claiming that it was made in good faith to secure money loaned at the time of its execution, etc.

Cross-bill was also filed by Coari against Olsen, setting up the facts alleged in the answer, praying that the pretended contract between Wakeley and Olsen be canceled; that Olsen surrender possession of the premises and account for rents and profits.

The cause was heard on the issues presented, the witnesses being examined orally in open court. The court found the

equities with Olsen, subject to the lien of the mortgage executed by Coari to Crescio, and, with that exception, decreed in conformity with the prayer of Olsen's bill.

This appeal is prosecuted by Coari only.

Messrs. E. H. & E. N. GARY, for the appellant.

Messrs. McDAID & KNIGHT, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The most important questions presented by this record are of fact. They are, *first*, was the contract between Wakeley and Olsen, for the reconveyance of the property, actually made, as it purports to have been, on the 28th of November, 1874, or was it made subsequent to the conveyance by Wakeley to Coari, and ante-dated. *Second*, if that contract was, in fact, made on the 28th of November, 1874, is Olsen estopped from claiming under it, as against Coari.

The evidence is somewhat voluminous, and, on most points, directly contradictory; and, since it can subserve no useful purpose to reproduce it here, in detail, we shall only state our conclusions thereon,—premising that the witnesses were here examined orally, before the chancellor, and that he had, hence, the same facilities for forming an opinion of the relative merit and weight of the testimony given by the several witnesses, as has a jury in trials at law; and that there is, therefore, the same necessity that exists on a trial by jury, that the error in finding as to fact shall be clear and palpable to authorize a reversal.

We are not clearly satisfied, then, that the finding of the court upon either question of fact was palpably unauthorized by the evidence.

The evidence of Wakeley, for reasons sufficiently disclosed by the record, might well be regarded as shedding no reliable light upon the transaction, and, throwing it out of the case, there is but little to impeach the *bona fides* of the date (Nov.

28, 1874,) as the actual date of the contract for reconveyance. The date of the receipt for rent given by Olsen to Wakeley, read in the light of Olsen's explanation, (that it was signed by him in ignorance of its contents, and without any design to evidence a state of facts inconsistent with his repurchase of the property on the 28th of November, 1874,) is of no significance as a contradiction of the date of the contract of reconveyance.

With regard to the circumstances urged as estopping Olsen from claiming, as against Coari, under the contract of the 28th of November, 1874, we deem it sufficient to say, that we are not clearly satisfied the court below ought to have disbelieved Olsen and his witnesses, and have given implicit credence to the testimony to the contrary, on behalf of Coari. If Olsen speaks the truth, he made no assertion and did no act which should have misled Coari, before his purchase, as to the ownership of the property. Coari's admission that when speaking to Olsen in regard to the property, he withheld from him all knowledge that he desired information with a view to becoming a purchaser of the property, and falsely represented that he desired to rent it, might well be regarded as strongly tending to support Olsen. It would, to say the least, be verging upon doubtful ground to say that a party shall be estopped from asserting his title to real estate because of declarations in regard to the title, obtained from him by cunning and falsehood. Aside from this, however, the circumstance that Coari admits that he did not openly and frankly inquire in regard to the property as one seeking a knowledge of the property and its title with a view to purchase, tends to confirm Olsen that the ownership of the property was not made the subject of consideration,—at least in such a way that he should have anticipated importance could be attached to his remarks.

The testimony of Longnetti and Costa, contradicted as it is by Olsen and his son, can not be regarded as of controlling importance, in any aspect of the case. Their mission seems to have been chiefly to hear something to testify to that would

make in favor of Coari and against Olsen. Olsen was under no obligation to explain to them, with legal accuracy, the nature of his title, and, as they were of different nationalities, it is quite probable that either through his inability to express himself with sufficient clearness, or their inability to precisely comprehend his language had he attempted an explanation of his title, it would not have been attended with success. The only thing that may be said to be entirely free from doubt in regard to the interview between these witnesses and Olsen is, they gave him a paper notifying him to quit the premises, which he refused to touch, and that he claimed the right to remain in possession. There is no pretense for basing an estoppel upon anything that then occurred, and what was said by Olsen is not free enough from doubt to make it of much weight as a contradiction of the date of the contract for reconveyance.

The only question of law is (the contract for reconveyance not being placed upon record), was Olsen's possession, at the date of Coari's purchase, sufficient notice to put Coari upon inquiry as to Olsen's rights.

Olsen was in possession of the third floor of the house, as tenant to Wakeley, when the contract for reconveyance was made, on the 28th of November, 1874. The second floor was then vacant, and the first floor was occupied by a tenant to Wakeley, whose term did not expire until after Coari purchased.

We think it may be regarded as a reasonable conclusion, from the evidence, that immediately after the contract for reconveyance (at all events before Coari purchased), Olsen was in the possession of the second and third floors of the house, claiming as owner, his own family occupying the third floor, and that of his son-in-law, Heinz, who claimed under him as landlord, the second floor. It does not appear that there was any change in the first floor, but, as Coari makes no claim to having acted upon the faith of the declarations or possession of that tenant, we do not regard this of any moment.

Appellant makes the point, upon these facts, that the possession of Olsen, after the contract of reconveyance was made, was no notice that he thereafter claimed rights as purchaser, but that the public were still to regard it as under his former tenancy,—in other words, that his possession was simply notice of the title or claim under which he first entered or held possession.

This position, if tenable, could hardly help appellant, since Olsen's possession of the third floor first commenced while he was the unquestioned owner of the property, and was continued when he conveyed to Wakeley, and until after the contract was made by Wakeley for reconveyance; and the only change, at any time, was by contract recognizing Wakeley as owner, just as it was, afterwards, by contract recognizing Olsen as owner.

But, although other courts have held the doctrine of notice by possession as subject to being materially modified by circumstances, this court has uniformly held that actual occupancy is equal to the record of the deed or other instrument under which the occupant claims, and a purchaser is bound to inquire by what right or title he holds. The purchaser takes the premises subject to that title or interest, whatever it may be. *Dyer* v. *Martin,* 4 Scam. 147; *Brown* v. *Gaffney,* 28 Ill. 150; *Doyle* v. *Teas,* 4 Scam. 202; *Williams* v. *Brown et al.* 14 Ill. 201; *Davis* v. *Hopkins,* 15 id. 519; *Prettyman* v. *Wilkey,* 19 id. 241; *Truesdale* v. *Ford,* 37 id. 210; *Lumbard* v. *Abbey,* 73 id. 178; *Whittaker* v. *Miller,* 83 id. 386; *Strong et al.* v. *Shea,* id. 575.

So far, at least, as the facts of the present case are concerned, we adhere to the common law rule, that where a tenant changes his character by agreeing to purchase, his possession amounts to notice of his equitable title as purchaser. 2 Sugden on Vendors, (8th Am. ed.) 343, § 24; *Daniels* v. *Davidson,* 16 Vesey, (1st Am. ed.) 249; *Chesterman* v. *Gardner,* 5 Johns. Ch. 32.

The seeming contradiction in the decree sustaining Crescio's mortgage, whilst denying a title in Coari that would seem essential to the making of that mortgage, is not complained of. The court based that part of its decree solely upon the clause in the agreement of reconveyance by which Wakeley reserved the right, at his election, to place an incumbrance of $800 on the property, treating the Crescio mortgage as such an incumbrance, so Olsen, in discharging it, will be but paying that much of what his contract of reconveyance requires him to pay.

On the whole, although not so clearly satisfied with the conclusions of the court below as to the facts as we could wish to be, we can not perceive any satisfactory reasons for reversing the decree on its merits.

There is, however, a technical error in the decree in requiring Coari to convey to Olsen. All that Olsen is entitled to, as respects Coari, is to have his title declared void. Olsen must rely on the title to be derived through Wakeley, pursuant to his contract. The decree directs Wakeley to execute and deliver to Olsen "a good and sufficient deed of conveyance," subject to the mortgage, etc., and that in lieu thereof the master in chancery execute and deliver such deed. This is all that is necessary to complete his title, as disclosed by this record.

The decree will, therefore, be modified in this court by striking out so much thereof as directs Coari to convey to Olsen. We do not, however, regard this modification as important enough to affect the question of costs. The decree will, in all other respects, be affirmed, and the costs will be taxed against the appellant.

*Decree modified, and affirmed.*