GEORGE W. GUILD *et al.*

*v.*

THOMAS M. HULL, Conservator, *et al.*

*Filed at Ottawa April 3, 1889.*

1. CHANCERY—*determining the facts—power and duty of the chancellor—trial by jury—whether verdict conclusive or merely advisory.* In chancery cases, except where the submission to a jury is required by the law or the rules of chancery practice, the chancellor is the judge of the weight of the evidence and of the ultimate facts established by it.

2. If the chancellor, in an ordinary chancery suit, submits controverted questions of fact to a jury, as he may do, the verdict or finding of the jury is advisory, only. He may adopt the verdict, or set the same aside and re-submit the question to another jury, or he may disregard the verdict and enter such a decree as, in his judgment, equity demands. He may enter his decree after setting the verdict aside, or without setting it aside.

3.   Where the chancellor submits to a jury the questions of the sanity of the maker of a deed, and undue influence in procuring the execution of the deed, and the jury finds that the maker was not sane and the fact of undue influence, and the chancellor enters a decree setting aside the deed *"pro forma,* and *pro forma* only,"* this will preclude the idea or presumption that he acted upon his own judgment of the truth of the allegations upon which the deed is set aside, and will be error, as the parties are entitled to the judgment of the chancellor and his consideration of the evidence, notwithstanding the verdict.

4.   SAME—*decree upon verdict—questions of evidence and instructions arising.*  Where a decree is based upon the verdict of a jury alone, and not upon the independent judgment of the chancellor, it will be reversed if the finding of the jury was the result of, or was influenced by the admission of, improper evidence or improper instructions.  In such case, the effect is the same as though the decree was based on improper evidence or a misconception of the law.

5.   SAME—*submitting questions of fact to a jury—in chancery—propriety of so doing.*  In cases where the evidence is voluminous and conflicting, it is eminently proper that an issue should be framed and submitted to a jury, and such practice should be adopted by the courts in all cases involving the question of insanity.

6.   EVIDENCE—*declarations of a grantor—to impair the title of his grantee.*  On a bill to set aside certain deeds on the ground of mental incapacity and undue influence, and the trial of the issues before a jury, the court allowed the complainants to prove the declarations of the grantor that the grantee and the grantor's wife were trying to force him to deed his property to the grantee:  *Held,* that the admission of such evidence was error.

7.   The declarations of a grantor, made either before or after the execution of his deed, are not admissible for the purpose of impeaching the same.

8.   In a proceeding against the administrator and heirs of a deceased grantee, to set aside a deed to him, on the ground of his undue influence, as the grantor, if living, would not be a competent witness to prove undue influence, it follows that his declarations, made out of the presence or hearing of such grantee, or after the death of the grantee, are equally incompetent for such purpose.

9.   SAME—*to prove undue influence in procuring execution of a deed.* On bill by the heirs of a deceased grantor to set aside a deed by him to a grandson, on the ground of undue influence, the court allowed witnesses to testify, over objections, that the wife of the grantor was a strong-minded woman, and directed generally what should be done about the house or about the business of the grantor; that in all contests with her husband she had her own way, and that she evinced a

great affection for the grandson : *Held,* that the court erred in admitting such evidence. Fraud or undue influence, to avoid a deed or will, must be directly connected with the execution of the same.

10. CONTRACTS—*mental capacity—presumption.* On the trial of an issue on bill to set aside a deed, on the alleged ground of the grantor being of unsound mind, the defendants asked the court to instruct the jury, that the law presumes every man to be sane and competent to transact his business, if of lawful age, until the contrary is shown, and that "therefore the jury must presume and find that W. (the grantor) at the time of the execution of said deed, etc., was of sound mind, and competent to execute the same, unless a preponderance of the evidence in the case proves the contrary ; and if, after considering all the evidence in the case, the jury are unable to determine, from the evidence, whether W. was of sound mind and competent to execute said papers or not, they should find, by their verdict, that he was of sound mind and was so competent." The court refused to give the same, and gave no other one upon the presumption of sanity : *Held,* that the court erred in refusing the instruction.

11. In the same case, the defendants asked this instruction : "The jury are instructed, that if they believe, from the evidence, that the grantor of the deed had memory and mind enough to recollect the property he was about to convey, and the person to whom he wished to convey it, and the manner in which he wished it to be disposed of, and to know and understand the business he was engaged in, such person is, in contemplation of law, of sound mind, and his age or bodily infirmity would not vitiate a conveyance made by one possessing such capacity." The court refused the same : *Held,* that the court erred in refusing such instruction.

12. The circumstance that the intellectual powers of a party have been somewhat impaired by age, is not sufficient to render him incapable in disposing of his property by deed or will, if he still retains a full comprehension of the meaning, design and effect of his acts.

APPEAL from the Circuit Court of Du Page county ; the Hon. C. W. UPTON, Judge, presiding.

Mr. CHARLES WHEATON, for the appellants :

As to what is undue influence, such as is required to set aside a deed or will, see 2 Pomeroy's Eq. Jur. sec. 851, note ; *Roe* v. *Taylor,* 45 Ill. 485 ; *Stone* v. *Wilbern,* 83 id. 105 ; *Yoe* v. *McCord,* 74 id. 44 ; *Rutherford* v. *Morris,* 77 id. 412 ; *Marx* v. *McGlynn,* 88 N. Y. 357 ; *Meeker* v. *Meeker,* 75 Ill. 260 ;

*Sturtevant* v. *Sturtevant,* 116 id. 340; *Conley* v. *Nailor,* 118 U. S. 127; *Kimball* v. *Cuddy,* 117 Ill. 213.; *Cudney* v. *Cudney,* 68 N. Y. 148.

The undue influence which will avoid a will or deed must be directly exercised at the time of making the instrument. *Rutherford* v. *Morris,* 77 Ill. 412; *Brownfield* v. *Brownfield,* 43 id. 147; *Monroe* v. *Barclay,* 17 Ohio St. 302; *Eckert* v. *Flowry,* 43 Pa. 46; *Small* v. *Small,* 4 Greenlf. 220; *McMahan* v. *Ryan,* 8 Harr. 329; *Blakely* v. *Blakely,* 33 Ala. 611; *Miller* v. *Miller,* 3 S. & R. 267; 1 Redfield on Wills, 524.

It was incompetent for complainant to prove the declarations of John Warne, made to Paxton and Mrs. Gates, that they were trying to force him to deed his property, or that his wife wanted him to deed to John Guild. It was incompetent, because it was not at or near the time of or directly connected with the execution of the instruments complained of, and also because the declarations of a grantor that he was unduly influenced to make the deed, are not competent to be introduced in evidence. It was also incompetent because, this suit being by a conservator, it was the same as though it had been brought by John Warne himself, and he being a party in interest, his declarations were not competent as against appellants, who were both defending their title to the property as heirs of John Guild, and George W. Guild was defendant, as administrator of John Guild.

John Warne, if complainant, would not be a competent witness to prove undue influence in procuring the instruments, and not being a competent witness, his declarations are not competent.

Parties making deeds or wills can not invalidate them by their own parol declarations, made either previously or subsequently, and such declarations should be excluded from the jury. *Dickie* v. *Carter,* 42 Ill. 377; *Jackson* v. *Kniffer,* 2 Johns. 31; *Comstock* v. *Hadlyne,* 8 Cow. 263; *Massey* v. *Huntington,* 118 Ill. 80.

The mental derangement or imbecility which will render a contract voidable, must be such that the party is incapable of comprehending the nature and effect of his act when he entered into it. *Baldwin* v. *Dunton,* 40 Ill. 188; *Sheldon* v. *Harding,* 44 id. 68.

That the mental powers have been somewhat impaired by age is not sufficient to invalidate a deed: *Lindsey* v. *Lindsey,* 50 Ill. 79; *Wiley* v. *Ewalt,* 66 id. 26; *Clearwater* v. *Kimler,* 43 id. 272; *Trish* v. *Newell,* 62 id. 196; *Meeker* v. *Meeker,* 75 id. 260; *Stone* v. *Wilbern,* 83 id. 105; *Willemin* v. *Dunn,* 93 id. 511; *Pickerell* v. *Morss,* 97 id. 220; *English* v. *Porter,* 109 id. 285; *Kimball* v. *Cuddy,* 117 id. 213.

The chancellor is the sole judge of the evidence and its weight, and even when he directs an issue of fact to be tried by a jury, to inform his conscience, he may adopt the verdict of the jury, or he may disregard it and render a decree against their finding, or he may grant a new trial, as he may believe justice demands. In our courts of equity, the chancellor being also the common law judge, he necessarily hears all the evidence upon which the jury acts, and if satisfied the jury have found correctly, it would be his duty to adopt their finding; but if dissatisfied, it would equally be his duty to disregard the verdict, and proceed with the cause in such a manner as to do complete justice between the parties. *Calvert* v. *Carpenter,* 96 Ill. 63; *Sibert* v. *McAvoy,* 15 id. 108; *Milk* v. *Moore,* 39 id. 588; *Williams* v. *Bishop,* 15 id. 553; *Sharkey* v. *Miller,* 69 id. 560; *Meeker* v. *Meeker,* 75 id. 260; *Smith* v. *Newton,* 84 id. 14; *Titcomb* v. *Vantyle,* id. 371; *Russell* v. *Fanning,* 2 Bradw. 632.

Mr. ELBERT H. GARY, for the appellees:

Upon the question of mental capacity, see *Gass* v. *Gass,* 3 Humph. 378; *Meeker* v. *Meeker,* 75 Ill. 267; *Shropshire* v. *Reno,* 5 Marsh. (Ky.) 91; *Converse* v. *Converse,* 21 Vt. 168; *Holden* v. *Meadows,* 31 Wis. 285; *Chafin will case,* 32 id. 558;

*Colman* v. *Robinson,* 17 Ala. 84; *Davis* v. *Calvert,* 5 Gill & J. 269; *Ford* v. *Ford,* 7 Humph. 92; *Schneider* v. *Manning,* 121 Ill. 376; *Freeman* v. *Easly,* 117 id. 317; *Parish* v. *Parish,* 42 Barb. 274.

Upon the question of undue influence the following precedents are referred to: *Lewis* v. *Mason,* 109 Mass. 169; *Yoe* v. *McCord,* 74 Ill. 33; *Dickie* v. *Carter,* 42 id. 376; *Brownfield* v. *Brownfield,* 43 id. 147; *Davis* v. *Calvert,* 5 Gill & J. 269; *Trumbull* v. *Gibbons,* 2 Zabr. 117; *Daniels* v. *Daniels,* 39 Pa. 559; *Tyler* v. *Gardner,* 35 N. Y. 559; *In re Welch,* 1 Red. Surr. Rep. 238; *Taylor* v. *Wilburn,* 20 Mo. 306; *Harrel* v. *Harrel,* 1 Duv. 203; *Reynolds* v. *Adams,* 90 Ill. 135; *Turner* v. *Cheeseman,* 2 McCart. 265; *Potts* v. *House,* 6 Ga. 324; *Clark* v. *Fisher,* 1 Paige, 171; *Rutherford* v. *Morris,* 77 Ill. 397; *Carmichael* v. *Reed,* 45 id. 108; *Roe* v. *Taylor,* id. 485; *Allmon* v. *Pigg,* 82 id. 149; *Tingley* v. *Cowgill,* 48 Mo. 291; *Lynch* v. *Clements,* 24 N. J. Eq. 431; *Thomas* v. *Stewart,* 62 Mo. 275; *Duffield* v. *Morris,* 2 Harring. 375; *Kevill* v. *Kevill,* 6 Am. Law Reg. 79; *Kimball* v. *Cuddy,* 117 Ill. 213.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was originally a bill by Thomas M. Hull, conservator of John Warne, to set aside a deed, bill of sale and a lease, made by said Warne to John W. Guild, who was a grandson of said Warne. Subsequently to the filing of the bill, Warne died, and thereafter the suit was prosecuted by his children and heirs-at-law, appropriate amendments having been made in the pleadings for that purpose.

On the 6th day of June, 1882, John Warne and wife executed and delivered to John W. Guild a deed for one hundred and eight acres of land, in consideration of past services rendered, and of natural love and affection. On the 10th day of August following, said Warne also made and delivered to Guild, his grandson, a lease of his home farm, during the life of the

lessor and that of his wife, and for six months after the death of the survivor of them, and also a bill of sale of all his personal property. Both of the last named were upon the condition that Guild should comfortably keep, maintain and support Warne and his wife during their several lives, and properly care for and clothe them, and pay all taxes assessed upon the property. John W. Guild entered into the possession of the property, and, it is conceded, faithfully performed these duties until December 28, 1886, when he died intestate, leaving George W. Guild and Abbie Guild, his father and mother, his only heirs-at-law. George W. Guild was appointed administrator of his estate, and duly qualified as such. The wife of John Warne died about a month after the death of the grandson, and said Warne died in the spring of 1888.

This bill was filed in 1887, against the administrator and heirs of said John W. Guild, deceased, seeking to set aside said deed, lease and bill of sale, on the ground of the mental incapacity of John Warne to make a valid disposition of his property at the time when the same were severally made, and on the further ground of undue influence over him by John W. Guild, in procuring the same. Answers were filed, denying the material allegations of the bill.

The circuit court directed the following issues to be submitted to a jury: First, was said John Warne, at the time of the execution and delivery of the deed dated June 6, 1882, and the lease and bill of sale dated August 10, 1882, to John W. Guild, of sound mind and memory, and mentally capable of making such conveyances; and second, were said deed, lease and bill of sale obtained by undue influence of John W. Guild. The jury, after hearing the evidence, arguments of counsel and the instructions of the court, returned a verdict that Warne was not of sound mind and memory at the time of the execution of the deed, lease and bill of sale, and was not mentally capable of making the same, and that their execution was obtained through the undue influence of the said John W. Guild.

The court overruled a motion for a new trial, and entered a final decree, which, after reciting the submission of the issues and the verdict of the jury, proceeds as follows: "And being fully advised in the premises, and having overruled the motion to set aside said verdict and for a new trial, as aforesaid, doth order and decree that a *pro forma decree*, and *pro forma only*, be entered in said cause in pursuance of said findings of the said jury, and not otherwise," etc. The defendants bring the case to this court by appeal.

In chancery cases, except in cases where the submission to a jury is required by law or the rules of chancery practice, the chancellor is the judge of the weight of the evidence, and of the ultimate facts established by it. If he submits controverted questions of fact to a jury, as he may do, the verdict or finding of the jury is advisory, merely. He may adopt the verdict, or set the same aside and re-submit the question to a jury, or he may disregard it and enter such a decree as in his judgment equity demands. He may enter his decree after setting the verdict aside, or without setting it aside. *Sibert* v. *McAvoy*, 15 Ill. 108; *Williams* v. *Bishop*, id. 553; *Milk* v. *Moore*, 39 id. 588; *Sharkey* v. *Miller*, 69 id. 560; *Meeker* v. *Meeker*, 75 id. 260; *Smith* v. *Newton*, 84 id. 14; *Calvert* v. *Carpenter*, 96 id. 63; *Russell* v. *Fanning*, 2 Bradw. 632.

It appears that the chancellor in this case made no independent finding, but rendered his decree in pursuance of the finding of the jury, "and not otherwise." The decree is *pro forma*, and *pro forma* only. This precludes the idea or presumption that the court acted upon its own judgment as to the truth of the allegations upon which the deed and bill of sale were set aside. Parties litigant are entitled to the judgment of the chancellor, and his consideration of the evidence, notwithstanding the verdict of the jury.

As the decree is based on the verdict of the jury alone, and not upon any independent judgment of the circuit court, it must follow, that if the finding of the jury was the result of,

or was influenced by, the admission of improper evidence, or by improper instructions given by the court, the decree should be reversed. The condition is somewhat anomalous, but the effect must necessarily be the same as though the decree was based upon improper evidence or a misconception of the law applicable. In such case there can be no presumption that the chancellor acted upon proper evidence, only, and rejected that which was incompetent. It therefore becomes necessary to examine whether the court below erred in the admission of evidence or in its rulings. Nor is this position rendered untenable by the fact that this court may pass upon the evidence submitted under the issues presented by the pleadings, and determine the fact at issue, and enter such decree, or direct the entry thereof by the circuit court, as it shall find, from the evidence, pertains to equity and good conscience.

The evidence is here voluminous and conflicting. In *Myatt et al.* v. *Walker et al.* 44 Ill. 485, we said, in speaking of cases of this character, turning upon a controverted question of fact, and where the evidence is voluminous and contradictory: "In such cases it is eminently proper that an issue should be framed and tried by a jury. Such a practice has always been sanctioned, and we think it more satisfactory and better calculated to promote justice, and the practice should be adopted by the courts below in all cases involving questions of insanity." Numerous other cases may be found holding the same view. In addition, the parties litigant and this court have a right to the benefit of the judgment of the chancellor as to the weight of the evidence and credibility of the witnesses, whom he saw, and thus had the means, which we have not, of determining the degree of credit to which they were entitled.

Upon the trial before the jury, the court allowed complainant to prove the declarations of John Warne, that John W. Guild and Mrs. Warne, his (John Warne's) wife, were trying to force him to deed his property to Guild. This was error. The declarations of a grantor, made either before or after the execution

of his deed, are not admissible for the purpose of invalidating the same. *Dickie* v. *Carter*, 42 Ill. 377; *Massey* v. *Huntington*, 118 id. 80; *Comstock* v. *Hadlyne*, 8 Cow. 263; *Jackson* v. *Kniffee*, 2 Johns. 31.

Again, this proceeding was against the administrator and heirs of the grantee in the instruments named, and as John Warne, if living, would not be a competent witness, as against the personal representative and heirs of his deceased grantee, to prove undue influence, it follows that his declarations, made out of the presence or hearing of such grantee, or after his death, are equally incompetent for such purpose.

The court also allowed many witnesses to testify, over repeated objections of the defendants, that the wife of the grantor, Warne, was a strong-minded woman, and directed, generally, what should be done about the house or about the business of Warne; that in all contests with her husband she had her own way, and that she evinced a great affection for her grandson. We think this evidence was improper to go to the jury. Fraud or undue influence, to avoid a will or deed, must be directly connected with the execution of the instrument, which is not here shown. (*Rutherford* v. *Morris*, 77 Ill. 412; *Brownfield* v. *Brownfield*, 43 id. 148; *Monroe* v. *Barclay*, 17 Ohio St. 302.) In *Brownfield* v. *Brownfield, supra,* this court say: "The testator may have acted under the advice of his son in his ordinary affairs, and been influenced by that advice, and still we do not see that it alone would tend to prove that he used undue influence in procuring the execution of the will."

The language of this court in *Rutherford* v. *Morris, supra,* is appropriate here. We there say: "This is the substance of all the evidence on the question of undue influence, and that such trivialities should be introduced into a court of justice, and against the objection of the opposite party, excites surprise. They fail to touch the question of the execution of the will." So here, there is no legitimate evidence of undue influence in procuring the execution of any of the instruments

sought to be set aside. The verdict of the jury must have been influenced and produced, at least upon this branch of the case, by irrelevant and incompetent testimony. If this were all of the case, we should have no hesitation in reversing the decree upon the merits.

On the question of mental capacity the court was asked by the defendants, and refused, to give the following instruction:

"The jury are instructed, that the law presumes every man to be sane and competent to transact his business, if of lawful age, until the contrary is shown; therefore, the jury must presume and find that John Warne, at the time of the execution of said deed, bill of sale and lease, was of sound mind, and competent to execute the same, unless a preponderance of the evidence in this case proves the contrary; and if, after considering all the evidence in the case, the jury are unable to determine, from the evidence, whether John Warne was of sound mind, and mentally competent to execute said papers or not, they should find, by their verdict, that he was of sound mind, and was so competent."

No instruction was given upon the presumption of sanity. The law presumes every man to be sane until the contrary is proved, and the burden of proof rests upon the party alleging insanity. (*Menkins* v. *Lightner*, 18 Ill. 282.) This instruction should have been given.

Shortly before the execution of the deed by Warne, some of his children and sons-in-law instituted proceedings in the county court to have him adjudged insane, but upon defense being made by Warne thereto, and in view of a prospect that he would dispose of his property to meet the wishes of his children, the proceeding was dismissed. The heirs, who are now the real complainants here, seem to have then had little question of his sanity. Indeed, they took, and now hold, property devised to them at about the time the papers were executed, which they are now seeking to set aside. Counsel to whom the will of Warne was submitted, and who drew the same from

a draft prepared by Warne himself, and the other counsel who prepared the deed, etc., after careful consideration and ample time to learn the state of Warne's mind, then regarded him as competent to dispose of his property. It is now claimed, however, that in June and August, 1882, John Warne was laboring under what is called *senile dementia,* and that his want of disposing capacity was the result of old age. On this aspect of the case the defendant asked the following instruction, which was refused:

"The jury are instructed, that if they believe, from the evidence, that the grantor of the deed had memory and mind enough to recollect the property he was about to convey and the person to whom he wished to convey it, and the manner in which he wished it to be disposed of, and to know and understand the business he was engaged in, such person is, in contemplation of law, of sound mind, and his age or bodily infirmity would not vitiate a conveyance ·made by one possessing such capacity."

This instruction should also have been given. His age, weakness or bodily infirmity would not render him incapable of disposing of his property by deed or will. As said in *Lindsey* v. *Lindsey,* 50 Ill. 79, "the circumstance that the intellectual powers have been somewhat impaired by age is not sufficient, if the contracting party still retains a full comprehension of the meaning, design and effect of his acts." And again: "Under these circumstances, it is not evidence of either mental imbecility or undue influence that the deceased conveyed his property to his son for a fraction of its value, taking from him notes secured by mortgage for such sum as he thought equitable, for the benefit of his other children, and a bond for his own maintenance during the remainder of his life." See, also, in this connection, *Wiley* v. *Ewalt,* 66 Ill. 26 ; *Clearwater* v. *Kimler,* 43 id. 273 ; *Trish* v. *Newell,* 62 id. 196 ; *Meeker* v. *Meeker,* 75 id. 260 ; *Stone* v. *Wilburn,* 83 id. 105 ;

*Pickerell* v. *Morss,* 97 id. 220; *English* v. *Porter,* 109 id. 528; *Burley* v. *McGough,* 115 id. 11.

There is much evidence in this case tending to support the contentions of the respective parties. The time taken for legal advice and deliberation by Warne, his carefulness to guard against mistake, the preparation of his will, having the land surveyed with a view to a correct description of it, the conditions inserted in the life lease for the support of himself and wife, the provision therein of forfeiture in case of breach, with other circumstances that might be named, tend very strongly to establish the belief, that though weak in body, and perhaps in mind, he had a clear and correct conception of his acts and their consequences. We, however, refrain from discussion of the evidence, and express no opinion as to the weight or credit to be given to it. As before said, it is a case where it would be eminently proper to submit the questions of fact to a jury, under the direction of the chancellor.

In conformity with the practice indicated, the decree of the circuit court will be reversed, and the cause remanded to that court, where the question of the sanity of said Warne may be again submitted to a jury, or determined by the chancellor, as in his discretion may be warranted.

*Decree reversed.*