JOHN ALEXANDER DOWIE *et al.*

*v.*

THEODORE D. DRISCOLL, Conservator.

*Opinion filed June 16, 1903—Rehearing denied October 7, 1903.*

1. EVIDENCE—*when declarations of grantor are admissible.* Declarations of a grantor made before or after the execution of the deed, while not admissible to prove fraud or undue influence, are admissible to show the mental condition of the grantor, if made at a period not too remote from the execution of the deed.

2. SAME—*when testimony of grantor is admissible.* In a proceeding by a conservator to set aside a deed made by his ward, the testimony of the latter, given at the hearing before the jury upon the inquest as to her mental condition, which was held the month after the deed was made, is admissible, as bearing upon her mental condition when the deed was executed.

3. APPEALS AND ERRORS—*when errors in instructions will not reverse.* In a chancery case, where findings of the jury are merely advisory and it appears the chancellor rendered a decree upon a consideration of all the evidence, the fact that the jury were misdirected by the instructions will not reverse.

4. SAME—*it is presumed the chancellor considered competent evidence only.* It is presumed that the chancellor considered only competent evidence, and if there is sufficient competent evidence to sustain the decree, the fact that incompetent evidence was admitted will not work reversal.

5. SAME—*when findings of chancellor will not be disturbed.* Findings of the chancellor will not be disturbed by a court of review unless error is clearly apparent, even though the case was submitted to a jury for an advisory verdict and part of the evidence is in the form of depositions.

6. FIDUCIARY RELATIONS—*burden is upon party benefited to overcome presumption of undue influence.* If an old person enfeebled in mind and body makes a deed of her entire property in trust for the benefit of persons in whom she reposes confidence, the latter have the burden of overcoming the presumption of undue influence when the transaction is attacked by the grantor's conservator.

APPEAL from the Circuit Court of DeKalb county; the Hon. C. A. Bishop, Judge, presiding.

This was a bill in chancery, filed October 15, 1901, by the appellee, Theodore D. Driscoll, as conservator of Mary Tindall, against the appellants, John Alexander

Dowie, Orlando L. Tindall, Nancy H. Tindall and Elizabeth T. Milner, in the circuit court of DeKalb county, to set aside a deed from Mary Tindall to said Dowie, bearing date August 5, 1901, conveying to him her homestead, located in Sycamore, in said county; also to set aside the transfer of two promissory notes for $1500 each, endorsed and delivered by said Mary Tindall to said Dowie upon the same day upon which said deed bears date, and to require said Dowie to account for and pay over to the said appellee, as conservator, the sum of $400, with interest from August 5, 1901, which said Dowie had before that date received from Mary Tindall; also to cancel a trust agreement entered into between said Dowie, Orlando L. Tindall and Mary Tindall relative to said property so conveyed and transferred by Mary Tindall to John Alexander Dowie.

The bill, in substance, alleged that Mary Tindall, on the 5th day of August, 1901, was about eighty-seven years of age; that she, by reason of her great age and feeble health, was mentally incapacitated to transact business and was susceptible to the undue influence of persons surrounding her and in whom she had confidence; that said Dowie was the founder and overseer of a religious sect and had great power and influence over his followers; that shortly prior to the 5th day of August, 1901, through the influence of said Orlando L. Tindall and Elizabeth T. Milner, the son and daughter of Mary Tindall, who were followers of said Dowie, said Mary Tindall, who was then under their influence and control, was introduced into the presence of said Dowie and became one of his followers; that said Dowie seeks to and does control the property interests of his followers through various agencies, and represents that he can and does successfully conduct various business enterprises, aided and directed by the special and direct interposition of Deity, acting through him; that the said Mary Tindall, through the influence of said Dowie and her said son and

daughter, was induced to intrust all her property, consisting of her homestead and personal property of the value of $3400, to said Dowie, and that at the time of the conveyance and transfer of her property to Dowie she was mentally incapable of comprehending the effect of such conveyance and transfer; that the appellee was appointed conservator of Mary Tindall on September 23, 1901; that he made demand upon Dowie to surrender to him the property of Mary Tindall, which he declined to do, and prays that the deed conveying said homestead to Dowie be set aside and he be decreed to restore to the appellee, as conservator of Mary Tindall, said personal property, and that said trust agreement be canceled.

A joint and several answer was filed by the appellants, denying the mental incapacity of Mary Tindall to make said deed, transfer said personal property and execute said trust agreement, and that said deed, transfer and trust agreement had been executed by Mary Tindall to Dowie by reason of the undue influence of the appellants, or either of them, over said Mary Tindall; admits that Dowie is the founder of a religious sect believing in the doctrine of divine healing, and that Mary Tindall, at the time of the execution of said deed, transfer and trust agreement, was an adherent of said Dowie; admits the great influence of Dowie over his followers, and that his influence is as strong over those whom he has not seen as over those who have been admitted to his presence; avers the great business success of said Dowie, which, it is alleged, shows that the enterprises under his management and control have been blessed and sustained by Deity; avers that the ultimate end of all of said enterprises is the extension of the kingdom of God on earth, through the Christian Catholic Church of Zion, of which said Dowie is the founder and general overseer; avers that said Dowie has provided by will for his successor, who will perpetually carry on the work of said church throughout the world after his death.    The appellant

Dowie specially answered, for himself, that if his co-defendants were willing he stood ready to restore the property of Mary Tindall, but without their consent he averred he did not feel like aiding the six other children of Mary Tindall in preventing her devoting her property to the advancement of religion and the extension of God's kingdom on earth.

A replication was filed, and the questions of undue influence and mental incapacity were submitted by the chancellor to a jury. The jury found both issues in favor of the appellee, whereupon the appellants moved the court to set aside the findings of the jury and to again submit said questions to a jury, which the court declined to do, and afterwards the court entered a decree upon consideration of all the evidence produced by the respective parties, finding that Mary Tindall was mentally incapacitated, on the 5th day of August, 1901, to make said deed, transfer said personal property and execute said trust agreement, and that the execution of said deed and trust agreement and the transfer of said personal property were obtained through the undue influence of the appellants, and setting aside said deed, the transfer of said personal property and said trust agreement, and requiring said Dowie to deliver up said notes to the appellee and to account to him for said sum of $400, with interest, from which decree the appellants have prosecuted an appeal to this court.

The deed sought to be set aside is in form a statutory warranty deed from Mary Tindall to John Alexander Dowie, conveying to him her homestead. The promissory notes assigned and delivered to Dowie were for the sum of $1500 each, bearing interest at six per cent, and the $400 had been delivered by Mary Tindall to Dowie in cash and by him invested in the Zion Land and Investment Association and a certificate issued to Mary Tindall therefor. The trust agreement was executed by John Alexander Dowie, Orlando L. Tindall and Mary

Tindall, and provided that Dowie was to convert all of the property of Mary Tindall received by him from her, into cash; that not to exceed $2500 thereof was to be invested in a house and lot in Zion City; that the balance was to be invested in the stock of the Zion City Bank, and that Orlando L. Tindall should hold all of said property in trust; that the income thereof was to be paid to Mary Tindall for life, then to Elizabeth T. Milner and Orlando L. Tindall for life, and then to Nancy H. Tindall, the wife of Orlando L. Tindall, for life, and upon the death of all of said beneficiaries said property was to vest absolutely in Dowie, his heirs and assigns.

V. V. BARNES, and JONES & ROGERS, for appellants.

CARNES, DUNTON & FAISSLER, for appellee.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

It is first contended that the court improperly instructed the jury as to the law. It appears from the record that the chancellor did not base the decree entered by him in this case upon the findings of the jury alone, but based the same upon his own conclusions as to the facts, which conclusions were reached by him from a full consideration of all the evidence in the case, and that the findings of fact by the jury were, at most, treated by him as only advisory. Where, in a case like this, the findings of the jury are accepted by the chancellor only as advisory, and it appears the decree was rendered upon the consideration by the chancellor of all the evidence produced by the respective parties, the fact that the jury may have been misdirected as to the law is not ground for reversal. (*Guild* v. *Hull*, 127 Ill. 523; *Kinnah* v. *Kinnah*, 184 id. 284; *Ring* v. *Lawless*, 190 id. 520.) In the case of *Guild* v. *Hull*, *supra*, it was held (p. 530): "In chancery cases, except in cases where the submission to a jury is required by law or the rules of chancery practice, the

chancellor is the judge of the weight of the evidence and
of the ultimate facts established by it. If he submits
controverted questions of fact to a jury, as he may do,
the verdict or finding of the jury is advisory, merely.
He may adopt the verdict or set the same aside and re-
submit the question to a jury, or he may disregard it and
enter such a decree as in his judgment equity demands.
He may enter his decree after setting the verdict aside,
or without setting it aside." In *Kinnah* v. *Kinnah, supra,*
the court said: "It appears from the record the chancel-
lor did not adopt the finding of the jury, but rendered a
decree setting aside and vacating the deed upon consid-
eration of the evidence produced by the respective par-
ties. In such state of the record it is not material to
consider whether the jury were correctly instructed by
the court as to the rules of law applicable to the cause.
The decree is the result of the judgment of the court as
to the facts established by the weight of the evidence,
and it is only necessary we should determine whether
the record discloses sufficient testimony competent to
be considered, to justify and uphold the conclusion as to
matters of fact reached by the court, and that the decree
of the court resulted from the application of correct le-
gal principles to the state of case made by the proofs.
(*Guild* v. *Hull,* 127 Ill. 523.) When the court, in such cases,
accepts the verdict of the jury as establishing the facts
and enters a decree *pro forma* thereon, the instructions
given by the court to the jury may be reviewed in this
court; but not so when, as here, the finding is the inde-
pendent act of the chancellor." And in *Ring* v. *Lawless,
supra,* on page 532 it was said: "The verdicts rendered
by the jury that the said Jeremiah Ring, Sr., had not
sufficient mental power and capacity to execute the said
eight several deeds in question and that he was unduly
influenced by appellants in making each of said deeds,
were upon feigned issues arising out of chancery, and
were advisory, merely, to the court. The chancellor did

not accept the findings that the deeds were the result of the exercise of undue influence on the part of the appellants, and refused to be controlled by such findings. The findings that the said Jeremiah Ring, Sr., was wanting in mental power and ability to execute the said deeds coincided with the conclusions reached by the chancellor as to the weight of the evidence. The decree that the deeds be vacated and canceled is the result of the application by the chancellor of the principles of law applicable, in his judgment, to the facts which he believed to be established by the preponderance of the evidence. It is therefore unimportant to consider the complaints that the court fell into error in instructing the jury as to the law applicable to these feigned issues."

It is next contended that the court erred in its rulings as to the admission of evidence offered upon behalf of appellee, the main contention being that the court erred in allowing the evidence of Mary Tindall and Orlando Tindall, given in the county court before the jury upon the hearing as to the mental condition of Mary Tindall which resulted in the appointment of the appellee as conservator, to be read to the jury upon this trial. The testimony of Mary Tindall, given at that time, was not offered for the purpose of impeaching the deed, transfer and trust agreement, but for the purpose of showing her mental condition at the time of the execution thereof. While the declarations of a testator or grantor, made before or after the execution of a will or deed, are not admissible to show undue influence or fraud, they are admissible to prove the mental condition of the testator or grantor at the time of the execution of the instrument sought to be set aside; if not made at too remote a period prior to or subsequent to the execution thereof. (*Massey v. Huntington,* 118 Ill. 80; *Bevelot* v. *Lestrade,* 153 id. 625; *Waterman* v. *Whitney,* 11 N. Y. 157; 62 Am. Dec. 71.) Here the instruments were executed on August 5 and the inquisition of insanity was held in the following Septem-

ber. We are of the opinion the evidence given by Mary Tindall was properly admitted as bearing upon her mental condition on August 5, 1901.

The testimony of Orlando L. Tindall, given at the hearing in the county court, was objected to on the ground that he was not jointly interested in the subject matter of this suit with his co-defendants and that admissions made by him were not binding on them. Under the authority of *McMillan* v. *McDill*, 110 Ill. 47, *Campbell* v. *Campbell*, 138 id. 612, and *Boyle* v. *Boyle*, 158 id. 228, we think this testimony should have been excluded. The presumption, however, is, that the chancellor only considered such testimony as was competent and disregarded such as was incompetent. (*Dorman* v. *Dorman*, 187 Ill. 154; *Van Vleet* v. *De Witt*, 200 id. 153.) In the latter case it was said (p. 156): "The hearing was before the chancellor, and the rule is, that in such case this court will not reverse for errors in the admission of testimony, unless it appears that the decree cannot be sustained except upon consideration of the incompetent testimony, (*Yarde* v. *Yarde*, 187 Ill. 636,) the presumption being that the chancellor considered only competent evidence in arriving at the findings embodied in the decree." As there is ample evidence in this record to sustain the decree without considering the objectionable evidence, we are of the opinion the admission thereof does not constitute reversible error.

It is further contended that the evidence does not sustain the decree. The evidence was mainly heard in open court and is conflicting, and the chancellor having seen the witnesses and heard them testify, was in a much better position to judge which witnesses were worthy of belief than we are from a perusal of their testimony when written out and read by us in the record. It has been wisely settled in chancery cases that a court of review will not disturb the findings of fact of the chancellor unless it is apparent error has been committed, and the

rule thus announced applies with full force although the chancellor has submitted the case to a jury for an advisory verdict and although part of the evidence is in the form of depositions. (*Elmstedt* v. *Nicholson*, 186 Ill. 580, and cases cited.) In the case of *Biggerstaff* v. *Biggerstaff*, 180 Ill. 407, in considering this question, on page 411 of the opinion it is said: "In a case of this character, where witnesses differ as to the mental capacity of the grantor and of his ability to legally transact business and to dispose of his property, the weight to be given to the testimony of witnesses is much more readily to be determined by a just chancellor than by a court of record, which reads only the written evidence. The law is well established in this State that where a cause is heard by the chancellor, and the evidence is all, or partly, oral, it must appear that there is clear and palpable error before a reversal will be had. (*Coari* v. *Olsen*, 91 Ill. 273; *Baker* v. *Rockabrand*, 118 id. 365; *Ellis* v. *Ward*, 137 id. 509; *Johnson* v. *Johnson*, 125 id. 510; *Allen* v. *Hickey*, 158 id. 362.) In a case of this character, where the issue is tried by the chancellor before a jury, and where the verdict of the jury is only advisory and may be set aside by the chancellor, the rule should be just as strong that clear and palpable error should appear before the decree should be reversed."

It appears from this record that Mary Tindall was very aged and quite infirm at the time the transfers sought to be impeached were made; that the appellant Elizabeth T. Milner lived with her and cared for her and that Orlando L. Tindall and his wife frequently visited her; that they, as well as Mary Tindall, were followers of Dowie and believed in his teachings. It is apparent from the situation of the parties that the relation of the appellants to Mary Tindall was such that great confidence was reposed in them by her, and that the transfer of her property to Dowie and the execution of said trust agreement were greatly to the advantage of the appel-

lants and to the disadvantage of Mary Tindall. Prior
to the execution thereof she owned and controlled said
property absolutely. After the execution thereof, if the
same were valid, she only had a life interest in the in-
come thereof, the residuum thereof having been trans-
ferred to appellant Dowie, and the immediate control
thereof, by said transfers and trust agreement, having
passed from her and become subject to that of said Dowie
and Orlando L. Tindall. The law is well settled that
where it appears that relations of trust and confidence
exist between parties to a transaction like this and the
parties receiving the transfer are benefited by such trans-
fer, the court will indulge in the presumption that the
party making the transfer was unduly influenced to make
the transfer until such presumption is rebutted by the
party benefited by the transfer. In Pomeroy's Equity Ju-
risprudence (vol. 2,—2d ed.—sec. 951,) it is said: "Where
there is no coercion amounting to duress, but a transac-
tion is the result of a moral, social or domestic force
exerted upon a party, controlling the free action of his
will and preventing any true consent, equity may relieve
against the transaction on the ground of undue influence,
even though there may be no invalidity at law. In the
vast majority of instances undue influence naturally has
a field to work upon in the condition or circumstances of
the person influenced, which render him peculiarly sus-
ceptible and yielding,—his dependent or fiduciary rela-
tion towards the one exerting the influence, his mental
or physical weakness, his pecuniary necessities, his ig-
norance, lack of advice, and the like. All these circum-
stances, however, are incidental, and not essential. Where
an antecedent fiduciary relation exists, a court of equity
will presume confidence placed and influence exerted.
*  *  * The doctrine of equity concerning undue influ-
ence is very broad, and is based upon principles of the
highest morality. It reaches every case, and grants re-
lief 'where influence is acquired and abused or where

confidence is reposed and betrayed.' It is specially active and searching in dealing with gifts, but is applied, when necessary, to conveyances, contracts, executory and executed, and wills." In the American and English Encyclopedia of Law (vol. 27,—1st ed.—p. 456,) the author says: "Certain transactions are presumed, on grounds of public policy, to be the result of undue influence. Such transactions are generally those occurring between persons in some relation of confidence, one toward the other. The presence of such relationship creates a presumption of influence, which can generally be rebutted by proof that the parties dealt as strangers, at arm's length; that no unfairness was used, and that facts in the knowledge of the one in the position of influence affecting the matter were communicated to the other." And in *Marshall* v. *Coleman*, 187 Ill. 556, on page 582 this court said: "Where two persons stand in such relation to each other that confidence is necessarily reposed by one in the other, and the one has over the other an influence which naturally grows out of that confidence, the abuse of such confidence or influence to obtain an advantage at the expense of the confiding party will not be permitted to prevail, even though the transaction could not have been impeached if no such confidential relations had existed.— *Tait* v. *Williamson*, L. R. 2 Ch. 55; 10 Am. & Eng. Ency. of Law, p. 327; 1 id. p. 375; *Purvines* v. *Harrison*, 151 Ill. 219; *Sayles* v. *Christie*, 187 id. 420; *White* v. *Ross*, 160 id. 56."

The doctrine repeatedly announced by this court is, that courts of equity "will scrutinize with the most jealous vigilance" transactions between parties occupying fiduciary relations toward each other, (*Casey* v. *Casey*, 14 Ill. 112,) and that the burden of proof is on the beneficiary, in such cases, to establish the fairness of the transaction, and that it did not proceed from undue influence. (*Jennings* v. *McConnel*, 17 Ill. 148; *Zeigler* v. *Hughes*, 55 id. 288; *Ward* v. *Armstrong*, 84 id. 151; *Wickiser* v. *Cook*, 85 id. 68.) In *Sands* v. *Sands*, 112 Ill. 225, on page 232 it was

said: "The rule is, where a person enfeebled in mind, by disease or old age, is so placed as to be likely to be subjected to the influence of another and makes a voluntary disposition of property in favor of that person, the courts require proof of the fact that the donor understood the nature of the act and that it was not done through the influence of the donee." In *Jones* v. *Lloyd*, 117 Ill. 597, it was held the burden of proof is upon the person obtaining the advantage, in cases of fiduciary relations, "to vindicate the bargain or gift from any shadow of suspicion, and to show that it was perfectly fair and reasonable in every respect, and courts will scrutinize the transaction with great severity." And in *Thomas* v. *Whitney*, 186 Ill. 225, on page 231, that "transactions between a party and one bearing a fiduciary relation to him are upon his motion *prima facie* voidable upon grounds of public policy, and the burthen of proof, the fiduciary relation being established, is upon the one receiving the benefit to show an absence of undue influence." It is not necessary that actual and intentional fraud be established, (*McParland* v. *Larkin*, 155 Ill. 84,) and "it is immaterial by whom the undue influence is exercised, whether by a beneficiary or an outsider." *Smith* v. *Henline*, 174 Ill. 184.

We have examined this record with care, and in view of the fact that the burden was upon the appellants to show that the transfers made to Dowie by Mary Tindall were not brought about by reason of undue influence exerted by them over her, growing out of the fiduciary relations which they sustained to her, and as the evidence was conflicting and the chancellor had, by reason of seeing and hearing most of the witnesses while testifying, a much better opportunity than we to judge of the weight to be given to their testimony, we are unable to say that the decree is manifestly unsupported by the evidence. *Kinnah* v. *Kinnah, supra.*

The decree of the circuit court will be affirmed.

*Decree affirmed.*