# BENJAMIN H. BRAINARD *et al.*

## *v.*

# E. G. HUDSON *et al.*

*Filed at Springfield March 22, 1881—Rehearing denied June Term, 1881.*

1. RENTS AND PROFITS—*as between mortgagor and mortgagee—in case of joint occupancy.* A mortgagor and mortgagee farmed the mortgaged premises upon shares,—the mortgagee being in possession, and the mortgagor, the son of the mortgagee, residing with his father. The latter, in the cultivation of the farm, furnished most of the teams, boarded the hands, and the crops were equally divided. Upon bill to foreclose the mortgage, it was *held,* that during the time the mortgaged premises were cultivated upon the joint account of the mortgagor and mortgagee, the latter ought not to be charged with rents.

2. PRACTICE—*time to object to master's report.* Upon reference to the master to state the account, in a suit to foreclose a mortgage, if the action of the master is not satisfactory, the party objecting should appear before the master and file exceptions to the report, and, if overruled by the master, the exceptions disallowed, together with the evidence bearing on the same, will be filed by the master in the court in which the suit is pending, where a hearing can be had before the court, and the decision of the court may be questioned upon error or appeal. Objection to the master's report can not be taken, in the first instance, in a court of review.

3. POSSESSION—*as notice of rights under unrecorded deed or mortgage.* Where a person is in possession of land under an unrecorded deed, that possession is notice to all subsequent purchasers or incumbrancers of whatever title is held by the person in possession, to the same extent as if his deed were duly recorded, and a subsequently acquired title, although first on record, will be held subject to the title which the person in possession may have to the property. This rule applies as well to possession held under an unrecorded mortgage.

4. SAME—*effect of possession by widow and heirs of mortgagee.* Where a mortgagee of lands dies while in the actual occupancy of the same, the possession being continued in his widow and heirs, the possession of the latter will afford the same notice to subsequent purchasers and incumbrancers as respects rights existing under the mortgage, as though the mortgagee himself were still living and in possession.

5. So where the mortgagor, in such case, made a second mortgage on the same premises, after the death of the prior mortgagee, but while the widow and heirs of the latter were still in possession, the second mortgagee took subject to the prior mortgage although the same was unrecorded.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Logan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. BEASON & BLINN, for the plaintiffs in error.

Mr. N. M. BROADWELL, for the plaintiff in error Brainard.

Mr. E. LYNCH, Messrs. HOBLIT & STOKES, and Mr. E. G. HUDSON, for the defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

On the 11th day of April, 1866, John L. Primm, being the owner of a certain farm in Logan county, consisting of one hundred acres of land, and also thirty acres of timber land near the farm, conveyed the property, by deed of that date, to his son, James H. Primm, for the expressed consideration in the deed of $5000. The deed was recorded April 13, 1866. At the time the deed was executed and delivered, James H. Primm gave John L. Primm a mortgage on the land to secure the payment of the purchase money, $5000, according to the tenor and effect of five promissory notes, for $1000 each, due in one, two, three, four and five years, with interest after due at ten per cent. This mortgage was not recorded until after the bill was filed. John L. Primm, however, remained in possession of the farm until December 2, 1873, when he died intestate. On the first day of October, 1874, James H. Primm borrowed of Benjamin H. Brainard $2500, and gave a trust deed on the farm to secure the payment thereof, which was placed on record the day it was executed. This bill was filed by the administrator of the estate of John L. Primm, deceased, against James H. Primm, Benjamin H. Brainard, and others, to foreclose the mortgage given to John L. Primm on the 11th day of April, 1866.

Two questions are presented for our consideration by this record. The first arises on the master's report, to whom the cause was referred, and who stated the account between the parties. The second question presented is, whether the mortgage given to Brainard, although subsequent in date, is entitled to priority over the mortgage given to John L. Primm, for the reason it was first on record.

It appears that the mortgagee, John L. Primm, occupied the premises from the time he conveyed to his son, continuously, to the date of his death. During this time the mortgagor made several payments on the notes, and he also claimed that the rent of the premises should be applied as a payment on the mortgage. Four hundred and twenty dollars of the money loaned by Brainard to James H. Primm was used to pay off a mortgage on the premises which had been executed by both the Primms to one Lucy Wright, after James H. Primm had obtained a deed from his father. In stating the account Brainard claims that the $420 should not be applied as a payment on the Primm mortgage, but as he advanced the money to relieve the premises from a mortgage lien, in equity he should be subrogated to the rights of Lucy Wright in the mortgage which she held, and which his money paid off. The court, in order to adjust the account between the parties, referred the cause to the master to state an account between them. The master, after taking the proofs of the respective parties, stated an account, and after allowing various payments in rents and moneys on complainant's mortgage, found there was still due thereon $3442.76, February 6, 1879. The $420 paid by James H. Primm to Lucy Wright, to discharge her mortgage, was allowed by the master as a payment on complainant's mortgage of date October 3, 1874, the time when the money was paid. In stating the account the master allowed no interest on complainant's notes until April 11, 1869, nor did he charge complainant with the rents until that time, and no rents were allowed

after the death of John L. Primm. The report of the master, after having been examined by the court, was approved, and this decision of the court is relied upon as error.

It is contended that the master ought to have charged complainant with the rent of the land from 1866 to 1869, and that the sum of $420, paid Lucy Wright in satisfaction of her mortgage out of the money Brainard loaned, should not have been credited on complainant's mortgage, as was done by the master, but that Brainard should, in any event, have been subrogated to the rights of Mrs. Wright in the premises to the extent of $420, and decreed a prior lien for that amount. While the mortgagee occupied the premises from 1864 to 1869, yet we do not think he should in this proceeding be charged with rents during that period, as it is apparent from the evidence that during those years James H. Primm lived with his father, and the farm was cultivated on shares. The father furnished most of the teams, boarded the hands, and the crops were equally divided. We shall not, however, stop to determine whether the statement of the account by the master was correct or incorrect. The plaintiffs in error filed no exceptions to the master's report, either before the master or in the circuit court. So far as appears, no objection whatever has ever been made to the report until the case reached the Appellate Court. The objections now made to the statement of the account by the master come too late. If the account was not properly stated, plaintiffs in error ought to have appeared before the master and filed exceptions to the report, and if they were overruled by the master, the exceptions disallowed, together with the evidence bearing upon the same, would have been filed by the master in the circuit court, where a hearing could have been had before the court, and if disallowed there, the decision of the court could be assigned for error on appeal. *Brockman* v. *Aulger,* 12 Ill. 277; *Reigard* v. *McNeil,* 38 id. 400; *Pennell* v. *Lamar Ins. Co.* 73 id. 303.

We now come to the other question in the case. The court, in the decree, made the mortgage given to Brainard subject to the one given to John L. Primm. If Brainard had no notice of the existence of the Primm mortgage, or no notice of any fact which would be sufficient to put a prudent person upon inquiry, he would be entitled to protection, although his mortgage was executed some years after the one given to John L. Primm. Where a person is in the possession of a tract of land under an unrecorded deed, that possession is notice to all subsequent purchasers or incumbrancers of whatever title is held by the person in possession, and a subsequently acquired title, although first on record, will be held subject to the title which the person in possession may have to the property. Here, from 1866, when the land was conveyed to James H. Primm, John L. Primm was in the open and notorious possession of the property until his death, December 2, 1873, and after his death the possession was continued by his widow and minor children until long after the mortgage was made to Brainard. From 1864 to 1869 James H. Primm lived with his father on the farm, and cultivated it on shares. In 1869 James left the farm and moved on another place. At this time James had paid little or nothing on the farm, and what arrangement was made between him and his father in regard to the terms under which the land was to be occupied, is not very clear from the evidence. This much, however, is apparent, that John L. Primm held the possession from 1869 under the mortgage executed to him by James, and it seems to have been understood that the rent of the farm should be applied on the mortgage debt. · While John L. Primm occupied the farm under his mortgage, whether the mortgage was on record or not, a subsequent purchaser or mortgagee from James would take with notice. Had he been in possession under an unrecorded deed, his possession would have been notice of whatever title he held under such deed, and we perceive no substantial distinction

between a possession held under an unrecorded deed and a possession held under an unrecorded mortgage. The same principle which would protect the person in possession under one would afford protection under the other.

We had occasion in *Coari* v. *Olsen*, 91 Ill. 273, to discuss somewhat the effect of a possession of real property held under an unrecorded instrument as against a subsequent purchaser, and it was there said: "Although other courts have held the doctrine of notice by possession as subject to being materially modified by circumstances, this court has uniformly held that actual occupancy is equal to the record of the deed or other instrument under which the occupant claims, and a purchaser is bound to inquire by what right or title he holds. The purchaser takes the premises subject to that title or interest, whatever it may be."

Had Brainard obtained his mortgage while John L. Primm was in possession of the land, and before his death, it seems clear that such mortgage could not be held to have priority over the unrecorded mortgage held by Primm. Brainard's mortgage was not, however, executed until after the death of Primm, but we do not think this fact bettered Brainard's condition. The character of the possession of the property was in no manner changed by the death of Primm. The widow and children of the deceased continued to occupy the premises after his death in the same manner that he had done before, the widow, as she testified, holding the notes and mortgage in her possession. The legal representatives of John L. Primm, the mortgagee, had the right to hold the possession of and occupy the farm until the mortgage debt was paid, however long that might be; and while the premises were thus occupied under the mortgage, a subsequent grantee of the mortgagor could take subject only to such prior mortgage. It is doubtless true that the title to the notes secured by the mortgage upon the death of Primm passed to his administrator, but that does not materially

affect the question. Under the mortgage the legal title to the premises, upon the execution and delivery of the mortgage, passed to John L. Primm, the mortgagee, and upon his death this title would at law pass to his widow and heirs, and as their possession of the premises was notice of whatever title they had, when Brainard took a mortgage he took with notice of the unrecorded mortgage, and whatever rights he acquired in the premises must be held subject to the prior mortgage.

We are of opinion that the decree of the circuit court was right. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*