Helen A. Schuchardt

*v.*

The People *ex rel.* Frank H. Hall.

*Filed at Mt. Vernon June 21, 1881.*

Master in chancery—*woman may fill the office.*   A woman is eligible to the office of master in chancery, and her appointment to such office, though she be not an attorney at law, is valid.

Appeal from the Appellate Court for the Fourth District; —heard in that court on appeal from the Circuit Court of Union county; the Hon. Oliver A. Harker, Judge, presiding.

This was a proceeding by information in the nature of a *quo warranto,* on the relation of Frank H. Hall, against Helen A. Schuchardt, in the Union circuit court. A petition was filed, in which petitioner states that he is a resident of the county of Union and State of Illinois, and asks leave to file an information in the nature of a *quo warranto* against Helen A. Schuchardt, requiring her to show by what authority she claims to exercise the office of master in chancery of the county of Union, and State of Illinois.

Said petition further states, that she has held said office for more than eight months, and still continues to hold and execute said office, without any warrant of right whatever;

that she intruded herself into said office on the 16th day of June, A. D. 1880; that she is a female, and is not now and has never been licensed as a practicing attorney at law; that she has no knowledge of the law nor of the duties appertaining to said office, but employs men and attorneys to perform the duties of said office.

Said petition concludes by asking a rule, on the facts stated, upon Helen A. Schuchardt, to show cause why an information in the nature of a *quo warranto* should not be filed against her for usurping, intruding into and unlawfully holding and exercising said office of master in chancery.

Upon this, summons was issued, returnable to the March term, 1880, of the Union circuit court, and served upon the appellant; and afterwards, at the March term, 1880, of the Union circuit court, the State's attorney for that county filed an information, on the relation of Frank H. Hall, giving the court to understand that Helen A. Schuchardt, of the county of Union and State of Illinois, had, for more than eight months past, unlawfully held and executed, and still continues to hold and execute unlawfully, without any warrant of right, the office of master in chancery of said county. Said information further states that said Helen A. Schuchardt is a woman over the age of twenty-one years, a *feme sole*, of liberal education, a good accountant, and a ready and good writer, yet she is not and never has been a practicing lawyer, and for the reason she is a woman, she is now and ever has been ineligible under the law to the office of master in chancery. Information then concludes with usual prayer.

Next follow the pleas, filed the 30th of April, A. D. 1880, to the information. The first plea states, that on the 16th day of June, A. D. 1879, by an order of the circuit court then in session in the county of Union and State of Illinois, Helen A. Schuchardt was duly and lawfully appointed master. in chancery of said Union county, from the 16th day of June, A. D. 1879, for and during the term of two years, ending on the 16th day of June, A. D. 1881, which said

order was then and there in open court duly entered of record, and duly signed by John Dougherty, one of the judges of the circuit court of the State of Illinois, and the presiding judge of the Union county circuit court, which said order of appointment is set out in full in said plea.

The plea further avers, that in compliance with said order, she did, on the said 16th day of June, execute and file bond, in $5000, with good and sufficient sureties, which bond is set out in full in said plea, together with its approval. Said plea further avers, that after the filing and approval of the bond she took the oath of office as such master in chancery, which is set out in full in said plea.

The plea then concludes by stating, that by virtue of said appointment she has held the office of master in chancery since June 16, 1879, and still holds the same, as she lawfully might, without this, that she has usurped said office, and concludes with a verification.

The second plea is in precisely the same words as the first plea, up to and including the oath of office, when said plea concludes as follows : " And this defendant further avers, that she is a woman over the age of twenty-one years, a *feme sole,* a woman of liberal education, a good accountant, a ready and good writer, and is eligible under the law to the office of master in chancery, and does lawfully hold and can lawfully hold and exercise the rights and discharge the duties of said office, without this, that she, the said Helen A. Schuchardt, has usurped or now does usurp the office of master in chancery aforesaid, upon the said people, as by the said information is above supposed. All which matters the said Helen A. Schuchardt is ready to verify, etc. Wherefore she prays judgment, etc."

General demurrer was filed to each of these pleas, and sustained by the court. The respondent excepted, and, electing to stand by her pleas, judgment of ouster and for costs was rendered against her. From this judgment she appealed to the Appellate Court for the Fourth District, and that court,

on hearing at its February term, 1881, affirmed the judgment of the circuit court. This appeal is from that judgment.

The errors assigned raise only the question discussed in the opinion.

Mr. M. C. Crawford, and Mr. Sidney Grear, for the appellant.

Mr. Justice Scholfield delivered the opinion of the Court:

The single question is presented by this record, whether a female is, by reason of her sex alone, disqualified to hold the office of master in chancery.

The origin and duties of that office are thus explained by Bouvier's Law Dictionary, p. 121, title, "Masters in Chancery:" "The chancellors, from the first, found it necessary to have a number of clerks, were it for no other purpose than to perform the mechanical part of the business,—the writing. These soon rose to the number of twelve. In process of time this number being found insufficient, these clerks contrived to have other clerks under them, and then the original clerks became distinguished by the name of *masters in chancery.* He is an assistant to the chancellor, who refers to him interlocutory orders for stating accounts, computing damages, and the like. Masters in chancery are also invested with other powers, by local regulations. Vide Blake's Ch. Pr. 26; 1 Madd. Pr. 3; 1 Smith's Ch. Pr. 9, 19."

By our statute (Rev. Stat. 1874, p. 697, title "Masters in Chancery," section 6,) "master's in chancery, in their respective counties, shall have authority to take depositions, both in law and equity, to administer oaths, to compel the attendance of witnesses, take acknowledgments of deeds and other instruments in writing, and in the absence from the county of the judge, to order the issuing of the writs of *habeas corpus, ne exeat,* and injunction, and perform all other

duties which, according to the laws of this State and the practice of courts of chancery, appertain to the office." The seventh section of the same chapter also empowers masters in chancery to award the issuing of writs of *certiorari.*

It would seem quite clear, therefore, there is nothing in the origin of the office, or in the nature of the duties to be discharged, which renders it impossible that a female should fill the office.

Our constitution does not forbid females holding offices of this character,—and there is no such prohibition to be found in any statute.

At common law, females were incompetent to be attorneys at law, and to hold office, in general.

At our September term, 1869, Mrs. Myra Bradwell applied to this court for a license to practice as an attorney and counselor at law, and her request was refused, because of her sex; and in the opinion then filed it was, among other things, said: "If it be desirable that those offices which we have borrowed from the English law, and which, from their origin, some centuries ago, down to the present time, have been filled exclusively by men, should also be made accessible to women, then let the change be made, but let it be made by that department of the government to which the constitution has entrusted the power of changing the laws." *In re Bradwell,* 55 Ill. 535.

Presumably in response to this, the General Assembly passed an act, which was approved on the 22d of March, 1872, the first section whereof is in these words: "That no person shall be precluded or debarred from any occupation, profession or employment (except military) on account of sex: *Provided,* that this act shall not be construed to affect the eligibility of any person to an elective office." Rev. Stat. 1874, p. 478.

The word "profession" was doubtless intended to, and certainly does, cover the exact case involved *In re Bradwell, supra,* and that word is not, in its commonly accepted signi-

fication, appropriate to describe the occupancy of a public office. But "occupation" is a generic term, and includes every species of that *genus*,—and holding or discharging the duties of a public office is one species of occupation, just as carpentering, tailoring, farming, etc., are other species of occupation. Webster, in defining "occupation," mentions "office" as synonymous with "avocation," "engagement,". "calling," "trade," etc., and as, hence, being embraced within the definition of "occupation." See Unabridged dictionary, titles "occupation" and "office;" and to the same effect is Rojet's "Thesaurus of English Words," 625.

The saving clause embraced by the *proviso*, shows that it was supposed by the General Assembly, in the enactment of this statute, that "occupation" includes the discharge of the duties of a public office,—for, otherwise, there could not have been the slightest imaginable necessity for that clause. Because the eligibility of women to office generally—*i. e.,* to all offices—was presumed to be affected, it was necessary, in order to confine the effect of the statute to offices filled by appointment only, to expressly say, "this act shall not be construed to affect the eligibility of any person to an elective office,"—but (implication) it may affect, that is to say will affect, those to be filled by appointment, by allowing women as well as men to be appointed.

In our opinion appellant was eligible, and her appointment valid.

The judgment of the Appellate Court is reversed, and the cause remanded, with direction to that court to reverse the judgment of the circuit court, and remand the cause to that court for further proceedings consistent with this opinion.

*Judgment reversed.*

WALKER, J: I am unable to concur in the construction given to the statute in this case, and hold that appellant, under the law, is ineligible to hold the office.