MARGARET ENNESSER *et al.*

*v.*

APOLENA HUDEK *et al.*

*Opinion filed November 1, 1897—Rehearing denied December 14, 1897.*

1. MASTERS IN CHANCERY—*master's report is merely advisory.* In matters other than stating accounts the master's conclusions of fact are only *prima facie* correct, and the court, acting on its own motion or upon exceptions filed, may modify or reject the report if erroneous, defective or against the weight of the evidence.

2. APPEALS AND ERRORS—*objection that assignment of errors is not signed by counsel—when not considered.* An objection that an assignment of errors upon the record in the Appellate Court was not signed by counsel cannot be considered for the first time in the Supreme Court.

*Hudek* v. *Ennesser,* 66 Ill. App. 609, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

FRANCIS T. COLBY, (SHOPE, MATHIS, BARRETT & ROGERS, of counsel,) for appellants.

ALLEN & BLAKE, for appellee Apolena Hudek.

JOHNSON & MORRILL, for appellee Prosperity Loan and Building Association.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The controversy between the parties to this appeal relates to the order of priority of two trust deeds upon the property of Hallman & Ennesser, securing the appellant Margaret Ennesser and the appellee Apolena Hudek, respectively. There is a first mortgage on the property to the appellee the Prosperity Building and Loan Association. The premises are insufficient security for all the

debts secured.  The debtors, Hallman & Ennesser, are insolvent, and the question is, which of the trust deeds is next in order after said first mortgage.  The cause was referred to a master in chancery, who took the evidence and reported the same, together with his conclusion that the trust deed securing appellee Hudek was the second lien.  The chancellor sustained exceptions of Margaret Ennesser to the report, and found the issues in her favor, and that her trust deed was second only to that of the building and loan association, and he accordingly set down the lien of appellee Hudek under her trust deed as third in the order of priority.  She prosecuted a writ of error from the Appellate Court for the First District to the circuit court of Cook county, where the cause was heard, and the Appellate Court reversed the decree and remanded the cause to the circuit court, with directions to enter a decree in conformity with the master's report.

Appellants complain of the judgment of the Appellate Court, and attribute it mainly to a doctrine obtaining in that court that the findings of the master on questions of fact are conclusive upon the chancellor and courts of review, and cannot be disturbed by either unless in case of clear mistake or fraud.  Appellees insist that the doctrine stated is correct, and that for this reason the action of the chancellor in sustaining exceptions to the report, as against the weight of the evidence, was wrong, and the judgment of the Appellate Court was right.  We do not agree with appellees in this contention.  A master in chancery is a ministerial officer appointed by the court to assist by performing various services, mainly of a clerical character, in the progress of a case.  In *Schuchardt* v. *People ex rel.* 99 Ill. 501, it was said: "The origin and duties of that office are thus explained by Bouvier's Law Dictionary, p. 121, title, 'Masters in Chancery:' 'The chancellors, from the first, found it necessary to have a number of clerks, were it for no other purpose than to perform the mechanical part of the business,—the writing.  These

soon rose to the number of twelve.  In process of time this number being found insufficient, these clerks contrived to have other clerks under them, and then the original clerks became distinguished by the name of *masters in chancery*.  He is an assistant to the chancellor, who refers to him interlocutory orders for stating accounts, computing damages, and the like.   Masters in chancery are also invested with other powers by local regulations.'" The twelve masters in chancery included the master of the rolls, and bills were referred to them to determine whether they contained matters scandalous or impertinent; and they were also required, after interlocutory decrees, to state accounts, examine into incumbrances and debts, compute damages and clear up facts, so that a final decree might do complete justice.  Blackstone says: "These matters are always by the decree, on the first hearing, referred to a master in chancery to examine, which examinations frequently last for years, and then he has to report the fact, as it appears to him, to the court.  The report may be excepted to, disproved and overruled, or otherwise is confirmed and made absolute, by order of the court."  (3 Blackstone's Com. 453.)  The office has been abolished in England, but, as shown by the above and other decisions, is of substantially the same nature in this State.

In *McClay* v. *Norris*, 4 Gilm. 370, the practice when any question of fact has been referred to the master is stated to be, to file objections before the master before the report is turned into court, and it is said (p. 386):  "If the objections are not sustained, and the master adheres to his report, it is returned into court, when the party objecting may file exceptions, upon the hearing of which the whole evidence is brought forward and passes in review before the court."  The same practice was again stated to be the correct one in *Brockman* v. *Aulger*, 12 Ill. 277.  If the parties are content with the findings of the master and make no objection or exception thereto, they

cannot complain if the report is adopted by the court;
but if the findings are excepted to, they may require the
court to pass on them and approve or disregard them,
as they may appear to be in accordance with or against
the weight of the evidence.

In *Boston* v. *Nichols*, 47 Ill. 353, the decree left the mas-
ter to find the amount due on the last note, and in de-
fault of payment to sell certain premises, and it was said
(p. 359): "It is not the province of the master to adjudge
and finally determine upon the rights of the parties. That
belongs to the chancellor, and he cannot delegate it to
another.   The master is a ministerial and not a judicial
officer.   The court may, by special reference, require him
to hear evidence and find and report facts to the chan-
cellor, but before such finding can become binding it must
be approved by the court."

In *Rankin* v. *Rankin*, 36 Ill. 293, a decree was rendered
by the circuit court, by consent of parties, referring the
cause to a master "for hearing and determination on the
merits," and requiring him "to render a decree on the merits
and report on the same."   On a final hearing there was a
decree for complainant based on the report, which was
reversed by this court, not for mistake or fraud, but for
error.   It was held that the parties were not concluded
by the consent or report; that the reference could only
be considered as a reference for the opinion of the master
and for the preparation of a decree by him, subject to
the supervision of the court to which he was required to
report, and that the action of the master is always sub-
ject to the supervision of the court.

The case of *DeLeuw* v. *Neely*, 71 Ill. 473, was for the
foreclosure of a mortgage.   By the decree a sale of the
premises was ordered, with direction to pay the costs and
debt and any unpaid taxes.   The decree was reversed,
and it was said of the master in chancery (p. 474):   "His
duties are strictly of a ministerial character.   The court
has no authority to invest him with power, in the nature

of judicial duties, to adjudicate upon the amount or legality of such taxes as he may discover on the collector's books. These are strictly judicial questions, and can only be settled by the court."

In *Hards* v. *Burton,* 79 Ill. 504, it was held manifest error, in a decree for the foreclosure of a trust deed and mortgages where a sale was ordered for the amount due, to order that if default should be made in the payment of notes still to fall due, the master should sell for the satisfaction of the same. The court said (p. 509): "It was, in effect, allowing the master in chancery to find the amount due, and to, in effect, decree its sale, and then proceed to execute his decree. The master has no such power. He is but the ministerial officer of the court, to perform such duties as may be required of him by the chancellor in the performance of his judicial functions. His powers are delegated to him by the court, and the court can confer on him no judicial powers. Those powers are vested in the judiciary, and cannot be delegated to any but persons belonging to that department of government. All the acts of the master become binding only by being approved and adopted by the court. Hence the court alone can find, adjudge and decree so as to bind the parties and the subject matter."

*Wilhite* v. *Pearce,* 47 Ill. 413, was a partition suit in which there were infant defendants whose rights were protected by this court in a reversal of the decree, and it was said (p. 416): "The court should have found the amount of the lien and that it was then subsisting, and if referred to the master to ascertain the amount, he should have reported his finding to the court for approval. The master had no right to adjudicate on this question."

The judicial power of the State is vested in the courts named in the constitution and those created under its provisions. Masters in chancery are not included, and, although in England the masters in chancery were learned and commonly doctors of the civil law, in this State,

.under the decision in *Schuchardt* v. *People, supra,* a master need not be learned in law or a lawyer. He is a mere assistant of the chancellor, whose duties and powers are, we think, made sufficiently clear by the foregoing authorities.

Under the act to regulate the practice in courts of chancery, when a cause in which the parties have no right to demand a trial by jury is at issue, the court may hear the evidence, or, under section 40, may direct an issue or issues therein to be tried by a jury, or, under section 39, may refer the cause to a master in chancery or special commissioner to take and report the evidence, with or without his conclusions thereupon. If the cause is heard by the chancellor and the witnesses are examined before him in open court, a court of review has never hesitated for an instant to reverse his finding of fact if clearly against the weight of the evidence, after allowing to him the advantages to be derived from observing the demeanor of witnesses. The rule was stated in *Moore* v. *Tierney,* 100 Ill. 207, as follows (p. 212): "By the usage of appellate courts of general jurisdiction in England and America it has ever been held, in the absence of express statutes to the contrary, that the findings of inferior courts in chancery cases are open to review in the higher courts. Such courts have, from time immemorial, always proceeded in such cases to examine and determine for themselves the truth as to controverted questions of fact, —and this, generally, from a consideration of the evidence found in the record." If he directs an issue or issues of fact to be tried by a jury he may adopt the verdict, or disregard it and render a decree against the finding, or may grant a new trial, as he may believe justice demands, and his action is subject to review. (*Milk* v. *Moore,* 39 Ill. 584.) The verdict is advisory merely. If he adopts the third course, and refers the cause to a master or special commissioner to take and report to the court the evidence, and also directs him to report his conclu-

sions, the argument for appellees is, that the situation is transposed and the chancellor becomes the ministerial officer to enter the conclusion of the master. If such is the rule, and the conclusion of the master on questions of fact from which a decree necessarily follows is binding on the chancellor and on courts of review, all they can ever have a right to do is to affirm his conclusion. If the finding is not subject to revision because against the clear weight of the evidence, and no exceptions can be heard except such as are founded upon mistake, fraud, misconduct or abuse of authority, the master is exalted above the chancellor and the jury, and the chancellor is bound to obey his mere assistant, no matter how erroneous the finding or how inequitable the result. If the chancellor is bound to enter in his decree the finding of the master, of course the court of review can only approve the result and affirm the decree. This court has never announced any such doctrine nor given to the conclusions of a master greater force or effect than to those of the chancellor hearing the witnesses in open court. A rule tending to such consequences and producing a situation so ridiculous cannot be tolerated.

There is a class of cases where, for good reasons and by established practice, the rule is somewhat exceptional. This is in suits involving matters of account. One of the principal reasons which led to the creation of the office of master was the necessity for making up and stating accounts, and it has always been the special duty of masters to perform that service. Complex accounts are not a proper subject for examination by the court, and the taking of such an account should be referred to the master. (*Patten* v. *Patten,* 75 Ill. 446; *Moss* v. *McCall,* id. 190; *French* v. *Gibbs,* 105 id. 523.) Counsel are not permitted to impose upon the court the labor of making up and stating accounts consisting of numerous items, either in the first instance or by such general plan of exceptions as will amount to the same thing by compelling the court

to take up each item of the account.    In such cases the court in the first place settles the rights of the parties by an interlocutory decree which fixes the basis for stating the account, and if the master follows the directions the court will not re-state every account, item by item. That would be to destroy all the benefits of the reference, and impose upon the court labor which it is not required to perform.

In *Williams* v. *Lindblom,* 163 Ill. 346, objection was made in this court to the allowance of items in favor of Lindblom in stating the account, and that the amount deducted did not include all the worthless accounts.    The evidence was conflicting, but we said that the master's findings were, so far as we could see, justified by the evidence.    This was all that was necessary to the decision, but reference was made to *Ford* v. *Ford Manf. Co.* 73 Ill. 48, where it was held that this court could not be expected to take up each item of account in dispute, and also to *Lehman* v. *Rothbarth,* 159 Ill. 270, where the same rule had been held; and what was further said was not intended to enlarge the rule or give greater effect to the master's findings than stated in those cases.    The text in 14 Am. & Eng. Ency. of Law, 940, there cited, says: "In some States the findings of the master are *prima facie* correct, and the court will consider only such matters of law and fact as are brought before it upon exceptions."    In the note this State is classed as governed by that rule by the citation of *Anderson* v. *Henderson,* 124 Ill. 164.    That a statement of account may be the subject of proper exception, see *Brainard* v. *Hudson,* 103 Ill. 218, *Whittemore* v. *Fisher,* 132 id. 243, and *Snell* v. *DeLand,* 136 id. 533.

A party has a right of exception either as to the basis on which the account is stated or as to particular items that they are not proper charges or not sustained by evidence, and if his exceptions are overruled he may have them reviewed on appeal or error.    The master's conclusion as to facts is only *prima facie* correct, and the court,

acting upon its own advice, as where the rights of infants are involved or upon exception filed, may modify or reject it if erroneous, defective or against the clear weight of the evidence. The judgment of the Appellate Court cannot be justified on the ground that the master's report was conclusive and not subject to exception.

The facts of this case, as shown by the evidence, are substantially as follows: For several years before the fall of 1893 Clemens F. Hallman and Anton J. Ennesser were partners, under the style of Hallman & Ennesser, in manufacturing and selling furniture. The factory and grounds were subject to a mortgage to a building association. Anton J. Ennesser is a son of appellant Margaret Ennesser. He was unmarried, and lived with her and had charge of her affairs. She was about sixty-six years of age and unable to take care of her business. Loans were made of her money to the firm almost monthly, in various sums as it was needed, until in the fall of 1893, when they owed her about $9000. None of this was secured except $2700 secured by a second mortgage to Michael Bauerle, the most of which Mrs. Ennesser had paid for the firm, and the mortgage had been assigned to her. During the time these loans were being made the firm had promised her that when the building association mortgage was paid they would give her a mortgage. She never insisted upon a mortgage being made, but there was an understanding that she was to be secured in the future in that way. The firm was in failing circumstances for some time, and in the fall of 1893 Mrs. Ennesser refused to advance any more money. When her support was withdrawn the firm was practically helpless. Legal proceedings were threatened, and they searched for some one of whom they could borrow money. The appellee Apolena Hudek was a cousin of Hallman's wife. She had some means, and Hallman succeeded in negotiating with her for $3100, on condition that the firm should give her a second mortgage, that the Bauerle mortgage should be released of record, and

that there were no other liens on the property except the building association mortgage.    She had the records searched, and found only the mortgage to the building association and the mortgage of $2700 that was to be released.    She let them have $600 in cash and a mortgage for $2500, with three months' accrued interest, which was sold for the balance of the loan.    On January 15, 1894, Clemens F. Hallman and wife and Anton J. Ennesser made and acknowledged two trust deeds upon the property,— one to secure a note to Mrs. Ennesser in the sum of $9000, which they dated August 2, 1893, and one to secure a note for $3100 to appellee Hudek, which was dated January 1, 1894.    These trust deeds were filed for record January 20, 1894, and, according to the certificate of the recorder, at eleven o'clock A. M., and were given consecutive numbers, the trust deed of Mrs. Ennesser having the first number.    The trust deed for $2700 was released by William Hatterman, the trustee.    Mrs. Ennesser was present at the office of the notary when these trust deeds were made, but appellee Hudek was not present and had no knowledge of what was done there or of the making of the trust deed to secure Mrs. Ennesser, and gave no consent to anything that was done there or to the manner in which the trust deeds were filed for record.    She knew nothing of the indebtedness to Mrs. Ennesser, was in ignorance of any previous promise of a mortgage to her, and was not represented by any one in the transaction.    There was a conflict in the evidence as to whether it was arranged at the notary's office that Mrs. Ennesser should have the second lien and appellee Hudek the third.    Clemens F. Hallman and wife deny the arrangement, and there is no reason to suppose that they contemplated a fraud upon appellee Hudek at that time.    But the question whether there was such an arrangement or not is not very important, as appellee Hudek was not present nor consenting to the arrangement.    What was done was a gross fraud upon her and in violation of the agreement upon

which she parted with her money. She had the records searched again in the first part of February, 1894, after receiving her trust deed, and then discovered the fraud practiced upon her. She went to the factory and claimed her rights, and demanded of Hallman & Ennesser that the. wrong should be righted.

We are satisfied with the conclusion of the master that Anton J. Ennesser knew of the arrangement with appellee Hudek, before she parted with her money, that she was to have the second mortgage, and assented to it. The property was not worth more than the mortgage to the building association and the debt secured to Mrs. Ennesser, and he very well knew that no person would loan money on a third mortgage of that kind. There was also evidence that Mrs. Ennesser knew of the arrangement, and sanctioned it. This is denied, but whether she knew it or not, her son and agent certainly did know it. She customarily relied on him to look after her interests, and he was the one who proposed and secured the making of the trust deed to give her a preference. She had notice, through her agent, of the agreement, which was binding on him as a member of the firm. It was her agent who committed the fraud upon appellee Hudek in the management of the business for her. She cannot take the benefit of his fraud, and we think that the master properly found that the trust deed had priority. For these reasons the court was in error in sustaining exceptions to the master's report.

A point is made by appellants that the Appellate Court erred in its judgment because the assignment of errors upon the record in that court was not signed by counsel. It is too late to make that point here. Had the attention of the Appellate Court been called to that fact an amendment might have been made, but that not having been done it will not be considered here.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*