## Josephine Weakley, Appellee, v. Adolph G. Mizell and Cora C. Mizell, Appellants.

1. BILLS AND NOTES, § 378*—*when possession of note evidence of payment.* The fact that a maker after maturity has possession of a note is prima facie evidence of its payment.

2. BILLS AND NOTES, § 451*—*when presumption of payment of note overcome.* The possession of a note by the maker after maturity, together with a receipt from the payee for the payment of the amount represented by the instrument, is prima facie evidence of payment, which can be overcome only by clear and convincing proof.

3. FRAUD, § 89*—*who has burden of establishing.* The person alleging fraud has the burden of proving it.

4. APPEAL AND ERROR, § 1175*—*when error assignable on verdict of jury in chancery case.* Even in the absence of a motion to set aside a verdict and for a new trial, error may be assigned on the admission of evidence, the instructions of the court, and such other questions as might be determined on such a motion, where a decree is entered in a chancery cause upon the pleadings and the verdict of a jury, without any independent findings by the chancellor.

5. EQUITY, § 379*—*conclusiveness of verdict of jury.* On the trial of a feigned issue in chancery the chancellor may adopt the verdict of the jury, or set it aside and enter such a decree as in his judgment equity demands; or if his conscience is satisfied from the evidence as to where the equities lie, he may enter a decree without setting aside the verdict, since the parties are entitled to his independent judgment as derived from his consideration of the evidence regardless of the verdict.

6. MORTGAGES, § 499*—*who has burden of proving payment.* An

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

instruction in a suit to foreclose a mortgage and to cancel a release alleged to have been fraudulently procured by the mortgagor, that the burden of proof was upon the defendant to prove payment of the secured debt by a preponderance of the evidence, *held* erroneous, where prima facie evidence of payment arose from the defendant's possession of the note secured by the mortgage.

7. FRAUD, § 89*—*burden of showing possession of note and release of mortgage fraudulently obtained.* One who alleges that the possession of a note and the release of a mortgage were fraudulently obtained by the mortgagor has the burden of proving the truth of the charge.

8. TRIAL, § 131*—*when insinuations against female witness reversible error.* Where counsel in his opening statement attacked the reputation of a female witness for the opposite party, and after an objection thereto was sustained renewed the attack, and objection was again sustained, and during his examination of the witness, without any basis therefor, he put insinuating questions to her impugning her character, notwithstanding the sustaining of repeated objections, *held* to be reversible error.

Appeal from the Circuit Court of Shelby county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the October term, 1914. Reversed with directions. Opinion filed April 16, 1915.

W. C. & T. M. HEADEN, D. G. THOMPSON and GEORGE B. RHOADS, for appellants.

E. A. RICHARDSON, WHITAKER, WARD & PUGH and W. C. & W. L. KELLEY, for appellee.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

Appellee, Josephine Weakley, filed her bill to foreclose a mortgage executed by appellants and to cancel a release of said mortgage which had been entered on the margin of the record thereof and executed by her. The bill avers that the mortgage was executed to secure a principal note of $4,000, dated June 24, 1908, payable to the order of appellee within three years with interest at the rate of six per cent. per

annum. To the original note were originally attached six semiannual interest coupon notes of $120 each. The mortgage covered two pieces of property situated in Shelbyville and owned by appellant, Adolph G. Mizell. One was a residence property and the other was a business property. The mortgage contained a provision that when the sum of $1,500 shall have been paid on the principal note secured therein, the last above described real estate shall be released of record by the mortgagee. The coupon interest notes became due each December 24th and June 24th, successively, after date of the principal note and mortgage.

The bill further avers that on June 24, 1910, A. G. Mizell paid $2,000 on the principal note and requested her to release the mortgage as to one of the premises described therein; that she at his request went to the recorder's office, being entirely ignorant of all matters pertaining to the releasing of mortgages, and that A. G. Mizell fraudulently procured her to sign her name on the margin of the record by falsely representing to her that she was only releasing the mortgage as to one of said premises; that at the time said fraudulent release was obtained the principal note and unpaid coupons were in her possession and so remained until December 24, 1910, when A. G. Mizell paid her the interest due on one coupon; that until a few days before this suit was brought she supposed she still had possession of said principal note and the last interest coupon; that on June 24, 1911, the balance of the $2,000 of said principal note became due, together with the interest; that when she requested Mizell to pay the same he refused and claimed that he had fully paid the total debt June 24, 1910, and that he had possession of the principal note and interest coupons.

The bill further avers that said principal note and interest notes were procured by Mizell through some trick or artifice "which had escaped the attention of your oratrix at the time the same were so obtained,"

and prays that said release be set aside and said mortgage foreclosed for the balance of the principal note of $2,000 and accrued interest.

The answer of appellants denies all allegations of fraud and avers that the payment on June 24, 1910, was $2,120 and not $2,000 as averred in the bill, and that said amount together with the prior payments fully satisfied and discharged the entire debt, both principal and interest, and that said mortgage was released by appellee of her own free will and accord with the intention of releasing the entire mortgage as to all the property, as the entire indebtedness was fully paid.

Two feigned issues of fact were submitted to the jury: First, did appellants procure the release of the mortgage by fraud; and second, has the principal note been paid in full? The jury returned a verdict on both issues in favor of appellee. Appellants did not make a motion for a new trial, but moved the court to disregard the verdict and to enter a decree dismissing the bill, which motion the court overruled, and the decree recites: "Thereupon coming on for final hearing upon the bill of complaint herein, the answer of the defendants thereto and the replication of the complainant to said answer, and the verdict of said jury; and the court being fully advised in the premises, doth find:"—and proceeds to find all the facts in favor of appellee, orders the release to be set aside and the mortgage foreclosed.

Appellant, A. G. Mizell, was a practicing physician and there is no dispute in the evidence but that on December 23, 1908, he paid the first coupon interest note in currency to appellee and received the note and also a receipt for its payment from her; that he paid the second coupon interest note in currency June 23, 1909, and received the note and also a receipt for its payment; that he paid the third coupon interest note

in currency December 24, 1909, and received the note and also a receipt for its payment.

The controversy in the case arises over a payment claimed to have been made by Dr. Mizell May 27, 1910. In May, 1910, he and his wife visited his father's home in New Burnside and while there he claims to have written appellee a letter stating that he intended to pay a part or all of the principal note on or before June 24, 1910. Appellee admits she received this letter from him, but claims that nothing was said in the letter except that he intended to pay the interest. The letter was not produced by appellee. The note itself provides the privilege of paying $100 or more on the principal on any interest date upon giving thirty days' notice of intention so to do, and Dr. Mizell testifies that the purpose of writing the letter in question was to give this thirty days' notice that he was going to make a payment on the principal. Such explanation is entirely reasonable as there was no necessity to give any written notice that he was going to pay the interest. He testified that on May 27, 1910, after he had returned from his visit to his father's home, he met Mrs. Weakley on the streets in Shelbyville, and that Mrs. Weakley said she had received his letter and expressed regret that he should pay any part of the principal but that she would accept it and that he told her he could pay her now; that appellee replied that she did not have the note with her and he said that she could give him a receipt for the payment and credit the amount on the note later, and that he and appellee went to his office where he took from his safe $2,000 in currency and paid the same to her; that he gave her five packages containing $300 each and one package containing $500; that she counted it and put it in her handbag; that he prepared a receipt for her to sign for the $2,000, which she did, and went away. This receipt was introduced in evidence, was dated May 27, 1910, and is for $2,000 "payment on note of

$4,000.'' Appellee admits that her signature to this receipt is genuine, but claims that she was not in Dr. Mizell's office on that day or about that time and does not know when, how or why she signed it. Dr. Mizell is more or less corroborated by three other witnesses, who were in his office on that day, and who testify positively that they saw appellee there at that time.

On June 24, 1910, Mrs. Weakley accompanied by her niece, Mrs. DeWald, went to the office of Dr. Mizell and it is not controverted that he at that time paid to Mrs. Weakley by a draft the sum of $2,120. Dr. Mizell testified that Mrs. Weakley at this time surrendered to him the principal note to which were attached the remaining three coupon interest notes, and also a receipt for the payment, which was a receipt for $2,120 ''in full balance due on note with interest in full to date.'' Mrs. Weakley admits that she signed a receipt for this sum at this time but did not know what the contents of said receipt were. Mrs. DeWald testified that she read the receipt at the time Mrs. Weakley signed it, and that the words quoted above were not at that time embodied in the receipt. Mrs. DeWald testified that Mrs. Weakley on this day did not have the principal note in Dr. Mizell's office, while Mrs. Weakley testified that she did have said note there at that time. After this payment of $2,120, Dr. Mizell, Mrs. Weakley and Mrs. DeWald went to the office of the circuit clerk for the purpose, as claimed by Mrs. Weakley, to have one of the properties, only, released from the mortgage, while as claimed by Dr. Mizell it was for the purpose of releasing the whole mortgage. The clerk produced the record book in which the mortgage was recorded and the usual marginal release of the mortgage was executed by Mrs. Weakley and witnessed by the clerk. The evidence does not disclose that anything was said or done by any of the parties at this time other than the clerk was asked to

produce the record, which he did, and Mrs. Weakley signed the marginal release, which the clerk witnessed, though Mrs. DeWald testifies that she cautioned Mrs. Weakley to be careful. Dr. Mizell testifies that when he handed Mrs. Weakley the draft for $2,120 she said that she thought he was only going to pay the interest and had only brought the note and not the mortgage and that he told her that was all right, that she could give him the note and a receipt for the draft, go to the courthouse, release the mortgage, and hand him the mortgage any day.

There have been two trials on these issues, and on the first trial Mrs. Weakley testified that Dr. Mizell made two payments of interest on this note after June 24, 1910, and that she cut the coupons from the note each time and delivered them to Dr. Mizell. The evidence shows conclusively that she was mistaken as to this, as the note itself shows that the last three coupons had never been detached therefrom. On this trial she admits that she was mistaken in the testimony given by her in this regard on the former trial. Her statements on the two trials are conflicting as to when she first discovered she did not have possession of the original note. The above presents, in substance, the testimony as it appears in the record.

The possession of the principal note by Dr. Mizell, which was past due when the bill was filed, was prima facie evidence of its payment, and the receipt of May 27th for the $2,000 is prima facie evidence of the payment of that amount at that time, and the legal effect of the receipt and the possession of the note can only be overcome by clear and convincing proof. The principal circumstances argued to support the contention that the payment of the $2,000 on May 27th was never in fact paid by Dr. Mizell, is the fact that he claims to have paid this amount in cash taken from his safe. The evidence shows that every payment of interest made upon the note had been made in cash, and that

before he made the last payment of $2,120 he went to the bank and asked for that amount in cash, but through the advice of the cashier procured a draft instead. This last payment of $2,120 was made up partly of his own money and partly of money procured from his father. It is also argued that because Dr. Mizell when he paid each of the coupon interest notes not only received the note, but also took a receipt for its payment, is evidence of fraudulent intention on his part for laying a foundation to subsequently defraud Mrs. Weakley out of a portion of her money. While these methods of payment were not possibly in accord with modern business methods of conducting such transactions, yet they were not in and of themselves evidence of fraud, and the burden of proving the fraud was upon appellee.

It is insisted that as appellants made no motion to set aside the verdict and for a new trial, they are now precluded from assigning any errors on the admission of evidence or the instructions of the court or upon any other questions which might have been determined upon such a motion if it had been made. This undoubtedly would have been true if the decree of the chancellor had been based upon his independent findings. *Riehl v. Riehl,* 247 Ill. 475; *Fanning v. Russell,* 94 Ill. 386. The decree in this case, however, appears to be based simply upon the pleadings and the verdict of the jury. In the trial of feigned issues in chancery, the chancellor may adopt the verdict or may set the same aside and resubmit the issues to the jury or may disregard the verdict entirely and enter such a decree as in his judgment equity demands, and if his conscience is satisfied as to where the equity lies from the evidence, he may enter a decree without setting the verdict aside, but the parties to the suit are entitled to the independent judgment of the chancellor derived from his consideration of the evidence regardless of the verdict of the jury. It follows, therefore, that the

decree, being based solely upon the verdict of the jury, if the verdict may have been procured or influenced by the wrongful admission of evidence or erroneous instructions in regard to the law, the decree cannot be sustained. *Guild v. Hull,* 127 Ill. 523.

The seventh instruction given on behalf of appellee instructs the jury that upon the issue as to whether the principal note offered in evidence had been paid in full, the burden of proof was upon the defendant to prove such payment, and that unless it believed that the defendants had proven the payment of said principal note in full by the preponderance or greater weight of the evidence, then it should find the issue in favor of the complainant. The possession of the note by defendants was prima facie evidence of its payment. The bill alleges that defendants claim to have possession of the note and if they did have possession of the note it was procured by fraud. The burden of proof upon this issue was clearly upon complainant. The instruction was erroneous and might well have been responsible for the verdict.

In the opening statement of counsel for appellee he made an attack upon the reputation of one of the witnesses who appeared for appellants, who was a woman. An objection to the remarks was sustained, but almost immediately afterwards a similar attack was made to which an objection was again sustained, and during the examination of the witness insinuating questions were propounded to her impugning her character. Notwithstanding that objections were sustained, counsel repeated the questions. So far as the record discloses, there was no basis for this attack upon the character of the witness, and the result of such remarks and examination could be but to prejudice the jury against her testimony. The repetition of such erroneous conduct is error even though objections thereto are sustained.

The decree must be reversed, and in accordance

with the chancery practice in such cases, with directions to the chancellor to either set aside the verdict and grant a new trial upon the issues, or to enter a decree based upon his independent judgment derived from the evidence.

*Reversed with directions.*