## Wilbur C. Shipman et al., Appellants, v. Laura F. Moseley et al., Appellees.

444

Opinion filed June 1, 1943.   Rehearing denied July 8, 1943.

CHAS. E. JONES, of Robinson, for appellants.

RALPH G. MEYER, of Flora, and TOLLIVER & TILLEMA, of Louisville, for appellees.

MR. JUSTICE STONE delivered the opinion of the court.

This is a suit brought in equity, to set aside a deed alleged to have been obtained by fraud and duress, and for an accounting. The appellants, Wilbur C. Shipman, Frances S. Coulter and Pearl Coulter, her husband, who will hereinafter be referred to as plaintiffs, brought the suit against appellees, Laura F. Moseley, and Aden L. Moseley, her husband, the Pure Oil Company, and Clarence T. Smith, trustee of Syndicate ''C,'' but by agreement of counsel the rights of the Pure Oil Company and Clarence T. Smith, trustee, in the property involved, are recognized, and for that reason the last two named appellees are not parties to this appeal. Laura F. Moseley, and Aden L. Moseley, appellees will hereinafter be referred to as defendants.

George C. Shipman died intestate December 12, 1918, leaving surviving him Laura F. Shipman, now Laura F. Moseley, defendant, his widow, and Wilbur C. Shipman, a plaintiff, Frances S. Shipman, now Frances S.

Coulter, a plaintiff, both minor children, and several other children, not parties to this litigation, as his only heirs-at-law; that at the time of his death decedent owned 67 acres in fee, also an undivided one-half interest in the 40 acres involved in this lawsuit, the other one half being owned by the then Laura F. Shipman. The said Laura F. Shipman administered upon the estate and was duly discharged and the estate closed. On July 8, 1921, she was appointed guardian of the four children, and never filed any final report and was never discharged as such guardian. She was married to Aden L. Moseley, defendant, on November 23, 1922. Wilbur C. Shipman became of age on August 22, 1923, and Frances S. Shipman, who married Pearl Coulter, became of age July 31, 1922.

Wilbur C. Shipman, Frances S. Coulter, as heirs of George Shipman, deceased, and Pearl Coulter, her husband, executed a quitclaim deed to Laura F. Moseley, date of September 1, 1923, conveying all their interest in the 40 acres, the consideration of which was six hundred dollars. Wilbur C. Shipman and Frances S. Coulter were each paid three hundred dollars. It is claimed by both Wilbur C. Shipman and Frances S. Coulter that their mother, Laura F. Moseley, represented to them, when the said deed was executed, that they were only conveying 10 acres apiece. Oil came in, on land in the vicinity of the lands in question, in February 1937, and the following summer Frances S. Coulter, Pearl Coulter, Laura Moseley and others drove to Louisville, Illinois, and went to the recorder's office, looked at the deed and found that it conveyed all of the interest of Wilbur C. Shipman and Frances S. Coulter in said property. Suit was filed on April 17, 1941, claiming that the deed in question was secured by fraud and duress. Defendants in their answer denied the allegations of fraud, and alleged that plaintiffs and defendants had jointly sought advice as to the interests of the parties and the value thereof,

before the execution of the instrument, that the consideration paid was full and adequate, and that plaintiffs were satisfied with the sale and consideration thereof, until after oil was discovered in the vicinity of the property about 17 years after the execution of the deed. The answer further set forth that plaintiffs were guilty of laches.

At request of plaintiffs, an issue as to whether the deed was procured by fraud, was submitted to a jury. At the conclusion of plaintiff's testimony, defendants filed a motion in writing for a directed verdict, which motion the court denied. Evidence was thereupon offered by defendants, and the jury returned a verdict in the affirmative on the framed issue. Thereupon, defendants filed a motion to disregard and set aside the verdict of the jury and to enter a decree for defendants. Motion was filed by plaintiffs to strike this motion, and upon a hearing by the court, an amended decree was entered, allowing the motion to disregard and set aside the verdict of the jury. The court further found that plaintiffs had failed to prove fraud as charged in the complaint and that plaintiffs had been guilty of laches, and were not entitled to relief. From this amended decree, plaintiffs prosecute their appeal to this court.

In support of his contention that the execution of the deed was obtained by fraud and duress, Wilbur C. Shipman testified that his mother, Laura F. Moseley, told him on one occasion, before the signing of the deed, when he had business in Flora, to see an attorney about some papers which the attorney would explain to him; that he went to the office and saw the attorney whom he believed to be Judge REAUGH, who explained to him that plaintiff's mother owned 40-acres of land and 10 acres were part in the bottom, and that she would give him $30 an acre for it, and that this was a good price. That his mother and step-father told him that if he did not sign the deed, they would take

it to court, and he would get nothing, and rather than go to court, he signed the deed.

He further testified that defendant, Laura F. Moseley, represented to him that the deed was for 10 acres of land. He claims that he did not read the deed before he executed it. It was signed in the office of Elmer Easley. Witness testified to threats of violence made by his step-father against him, but these were after the execution of the deed and seem to have no connection with that transaction. Witness stated that after he discovered in 1937 that the deed was different from what he thought it was, the delay was because he thought they could settle the matter out of court.

Frances S. Coulter testified and in many details is corroborated by her husband, Pearl Coulter, that her mother asked her to sign a piece of paper at Mr. Easley's office; that she told her that she was buying 10 acres at $30 an acre, or $300. That witness and her husband signed the deed, which she did not read, and that prior thereto her mother had told her that she had better sign the deed, or she would take it to court and witness would get nothing, and that she signed because she was afraid that her mother would take it to court.

Mrs. Coulter further testified to a visit made to the recorder's office in Louisville the summer of 1937, with her husband, Mrs. Moseley and others, where it was ascertained that she had conveyed away her whole interest in the property. She testified that the delay in taking any legal action in the matter, after the discovery of what the deed contained, was because they thought it might be settled out of court.

Laura F. Moseley, testifying in her own behalf, stated that before the execution of the deed, she and Wilbur C. Shipman and Frances S. Coulter went to the office of Mr. Sprig Reaugh, attorney, in Flora and upon stating the status of the parties to him, they

were advised by him that Mrs. Moseley had a homestead and dower, as well as a one-half interest in the property and that the land could not be divided, but would have to be sold to the highest bidder by the court, that later Wilbur said he would take $300 for his share and that Frances agreed to accept the same amount; that she paid them the agreed amounts, that there was nothing said about 10 acres and that they sold her whatever interest they had; that in 1937 she and Pearl Coulter, his wife, Frances, and others went to the recorder's office in Louisville and checked on the deed with Mr. Reaugh. She further testified that plaintiffs had never talked to her and did not bring up the subject of their interests until oil was discovered in the vicinity of the land in question.

Mrs. Moseley is corroborated in the main by her husband and codefendant, Aden Moseley, who gives a more detailed statement of what happened at the time of the execution of the deed, than any other witness. He stated that in company with Frances S. Coulter, Pearl Coulter, and Wilbur C. Shipman, he and his wife, Laura F. Moseley, went to Easley's furniture store, where his wife told Easley that they wanted to make a deed and when Easley asked if they had a description of the property, Mrs. Moseley replied that they did not and that he got the description from a plat book and prepared the deed on a typewriter, and after the deed was so prepared, read it to them.

Elmer Easley called as a witness testified that he did not remember anything in particular about the execution of the instrument, that it was merely a routine matter, that he did not remember whether or not the grantors read the deed, and that he did not tell them what it contained and that witness did not cover up the part of the deed describing the land.

Several witnesses were offered on behalf of defendants, who testified, that the value of the property

involved, exclusive of improvements, at the time of the sale, would be about $25 an acre.

It is urged among other things, that the trial court erred in finding that plaintiffs failed to prove that defendants or either of them committed fraud, as charged in the complaint; that the court erred in finding plaintiffs have been guilty of laches; that the court erred in setting aside the verdict of the jury in favor of plaintiffs and that there was error in granting the motion of defendants for judgment notwithstanding the verdict.

It is the theory of plaintiffs, that the motion presented to the court, after verdict of the jury, finding affirmatively upon the issue of fraud made up for them, was a motion for judgment notwithstanding the verdict, and that under such a motion the court could only decide whether or not there was evidence in the record with all legitimate inferences drawn therefrom, standing alone and considered true, with all explanatory and contradictory circumstances rejected, which would reasonably sustain a finding for the party against whom the motion was directed. In other words the court would not be authorized to determine the weight of the evidence or determine controverted questions of fact. Rule 22 of the Supreme Court is cited in support of this theory.

Supreme Court Rule 22, Ill. Rev. Stat. 1937, ch. 110, sec. 259.22 [Jones Ill. Stats. Ann. 105.25] is as follows: "The power of the court to enter judgment notwithstanding the verdict may be exercised in all cases where, under the evidence in the case, it would have been the duty of the court to direct a verdict without submitting the case to the jury."

The motion filed by defendants, after the verdict of the jury, was a motion to disregard and to set aside the verdict of the jury and to enter a decree for the defendants, inasmuch as the verdict of the jury was only advisory and asked that said verdict be disre-

garded by the court for the errors set forth in the motion.

This is strictly not a motion for judgment notwithstanding the verdict as contemplated by rule 22 and as applicable to suits at law, and in equity to those cases, such as will contests cases, wherein an issue of fact is made up for a jury and the verdict of a jury is not advisory, but is as conclusive as the verdict of a jury in an action at law.

The most radical change made in the practice by rule 22, is to permit either party to file a motion for judgment notwithstanding the verdict. We do not understand that this change is calculated to change the long established rule in Illinois, that the verdict of a jury in a chancery case, where the issue is not required by statute to be submitted to a jury, is merely advisory and it is discretionary with the chancellor to accept or reject the verdict as he believes justice requires. *Biggerstaff v. Biggerstaff*, 180 Ill. 407; *Oswald v. Newbanks*, 336 Ill. 490; *Cook v. City of Du Quoin*, 256 Ill. App. 452; *Meeker v. Meeker*, 75 Ill. 260; *Ennesser v. Hudek*, 169 Ill. 494, aff'g 66 Ill. App. 609; *Phillips v. Edsall*, 127 Ill. 535; *Titcomb v. Vantyle*, 84 Ill. 371; *Sibert v. McAvoy*, 15 Ill. 106.

On the trial of a feigned issue in chancery the chancellor may adopt the verdict of the jury, or set it aside and enter such a decree as in his judgment equity demands, or if his conscience is satisfied from the evidence as to where the equities lie, he may enter a decree without setting aside the verdict, since the parties are entitled to his independent judgment as derived from his consideration of the evidence regardless of the verdict. *Weakley v. Mizell*, 193 Ill. App. 494.

In the case of *Milk v. Moore*, 39 Ill. 584 in which case a feigned issue was made up the court said, "Our statute has, however, authorized an issue in chancery

to be formed and to be tried by a jury. Under this statute, it has been the practice to make an issue without using the common law forms of pleadings. . . . But the issue in chancery, or if there be more than one, should be distinct and explicit, presenting in each a single question, so clearly that it could not but be understood by the jury, and their verdict should be responsive to each. But the submission of the entire case to a jury is contrary to the practice, and is believed not to be calculated to promote justice, and should be discouraged, even when the parties desire such a trial.''

In the instant case, the specific question submitted to the jury was whether the defendant, Laura F. Moseley procured the deed of September 1, 1923, from the plaintiffs, by fraud. There still remained as a question involved in the determination of the whole case, the question of laches. The court saw fit to disregard the verdict of the jury, and to find the issues himself, as he is empowered to do under the decisions above quoted.

There seems to be a conflict in the testimony as to whether or not all the parties sought independent advice and relied upon that. There seems to be no doubt, but that, under the evidence the consideration paid was adequate, at the time of the execution of the deed. Both Wilbur C. Shipman and Frances S. Coulter testified that they did not read the deed. However, they both could read, and while it is claimed that they both had but little schooling and no business experience, they did not ask that the deed be read to them. One who is illiterate and unable to read cannot avoid a deed on this ground, where he did not require that it be read to him. 18 C. J. 226. In the instant case there was no evidence that anything was done by the grantee to prevent the grantors from familiarizing themselves with the provisions of the deed. There is

a conflict in the evidence as to whether or not Mrs. Moseley told the son and daughter that this deed was for 10 acres.

The only circumstance that might be construed as duress is the claim that the grantors were told that if they did not sign, Mrs. Moseley would take it to court and they would get nothing. There was apparently no threat of criminal prosecution therein involved. A threat to sue on a good cause of action does not constitute such duress as will avoid a deed. *Harris v. Tyson*, 24 Pa. 347, 64 Am. Dec. 661; *Dunfee v. Childs*, 59 W. Va. 225, 53 S. E. 209. And there evidently was a good cause of action, as they had been told in substance about a partition suit by Judge REAUGH. The interests of the parties in the land was such that a partition suit would lie. All of the threats made by defendant Aden L. Moseley against Wilbur C. Shipman were after the execution of the deed, and could not have induced it.

On the issue of laches, all the evidence in the record is to the effect that after the deed was executed in September 1923, no complaint was made to the grantee until 14 years later, in 1937, when oil was discovered in the vicinity, and suit was not started until four more years, and the only excuse offered was that they had hoped to settle the matter out of court. No details are given to enlighten the court as to what effort was made along this line. During all this time the deed was on record, having been filed for record on September 4, 1923, in the recorder's office of Clay county.

The chancellor is the sole judge of the evidence and its weight. He saw and heard the witnesses and their manner of testifying, and is the better judge of the weight to be given to the testimony of each. The law is well established in this State and where the cause is heard by the chancellor, and the evidence is all or partly oral, it must appear that there is clear

and palpable error before a reversal will be had. *Coari v. Olsen,* 91 Ill. 273; *Baker v. Rockabrand,* 118 Ill. 365; *Johnson v. Johnson,* 125 Ill. 510; *Ellis v. Ward,* 137 Ill. 509; *Allen v. Hickey,* 158 Ill. 362; *Biggerstaff v. Biggerstaff, supra.*

We are not inclined to hold that the court erred in setting aside the verdict of the jury, as to the issue of fact, and finding in its amended decree that the plaintiffs had failed to prove that defendants or either of them had committed fraud as charged in the complaint, or that the court committed error in finding that plaintiffs had been guilty of laches, and were not entitled to recover in equity.

A careful reading of this record does not convince us that there was such palpable error as would require a reversal of this decree, or a submission of this issue of fraud to another jury, and for these reasons the amended decree of the circuit court is affirmed.

*Affirmed.*